[No. F049033. Fifth Dist. May 23, 2007.]

DENNIS J. POWELL, Plaintiff and Appellant, v.
ALAN KLEINMAN, Defendant and Respondent.

COUNSEL

Law Offices of David J. St. Louis and Lynette D. Hecker for Plaintiff and Appellant.

Peterson & Bradford, Thomas R. Bradford and Lisa Kralik Hansen for Defendant and Respondent.

OPINION

**GOMES, J.**—Plaintiff Dennis J. Powell (Powell) sued defendants Alan Kleinman, M.D., Roy J. Levin, M.D., and Clovis Urgent Care Medical Center for medical malpractice arising from injuries he sustained when defendants failed to promptly diagnose and treat an injury to his spinal cord. Dr. Kleinman brought a motion for summary judgment supported by his and another expert's declarations that he met the applicable standard of care and did not cause Powell's injuries. The trial court granted the motion after sustaining Dr. Kleinman's evidentiary objections to the expert declaration Powell submitted in opposition to the motion.

On appeal, Powell asserts his expert witness's declaration opposing summary judgment was improperly excluded from evidence and the declaration establishes triable issues of material fact on whether Dr. Kleinman breached the standard of care and causation. As we shall explain, we agree and will reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 2001, Dr. Kleinman, a general practice physician who independently contracted with the Clovis Urgent Care Medical Center (Center) as a general practitioner, was the physician on duty when Powell came to the Center. Powell's patient registration form lists his reason for the visit as "pain in back, chest and stomach." Dr. Kleinman performed a physical examination and found no evidence of radiation, referred pain, spinal cord compression or radiculopathy. He noted that Powell's sensation and strength were intact and straight leg raising testing was normal. X-rays of Powell's chest and left ribs were taken, which showed no evidence of fracture or abnormality other than an incidental anomaly on one rib. Dr. Kleinman diagnosed Powell with posterior rib pain due to a probable old back strain, and prescribed pain medication and a muscle relaxant. Dr. Kleinman advised Powell to return in one week to be rechecked, and Powell was given a followup appointment for September 23, 2001.

On September 19, 2001, Powell returned to the Center and was seen by Dr. Roy Levin, with no change in diagnosis. Dr. Levin ordered an intramuscular injection, home rest, physical therapy and an MRI scan of the thoracic spine, and advised Powell to return to the Center on September 23 for his scheduled appointment with Dr. Kleinman.

On Sunday, September 23, 2001, Powell returned to the Center and was seen by Dr. Kleinman. Based on Powell's new and different complaints, Dr. Kleinman suspected he had a possible spinal cord compression. In order to rule out spinal cord compression, Dr. Kleinman arranged for Powell to be transferred to a hospital emergency room that had a neurosurgeon on duty on a Sunday for purposes of evaluation, management and followup. Dr. Kleinman telephoned Clovis Community Hospital and was told there was no neurosurgeon available or on duty that day, but a neurosurgeon was on call at Fresno Community Hospital (FCH). Dr. Kleinman telephoned FCH and spoke with a triage nurse, to whom he described Powell's condition and said he was transferring Powell to FCH specifically to rule out spinal cord compression. Dr. Kleinman also filled out a written transfer form to the FCH emergency department, to the triage nurse's attention, which stated the transfer was to "rule out spinal cord compression" and Powell was being referred for "evaluation, management and follow-up." After making the

referral, Dr. Kleinman did not receive a report or information from anyone at FCH indicating Powell was experiencing either spinal cord compression or anything other than a back sprain. Accordingly, Dr. Kleinman assumed staff at FCH had ruled out spinal cord compression on September 23, 2001, in accordance with his written transfer form.

Dr. Kleinman next saw Powell at the Center on October 1, 2001, at 6:35 p.m. The MRI Dr. Levin had ordered had been performed on September 27, 2001. According to Dr. Kleinman, while he was aware the MRI had been performed, the MRI report was "not available" to him and he did not have any information regarding the results that day. Powell still was experiencing back pain and other symptoms. Dr. Kleinman advised Powell to take his prescribed medications and return to the Center in one week for a recheck. While the radiologist had interpreted the MRI on September 27, the report was not transcribed until September 28 and signed by the radiologist on October 1 at 7:23 a.m. The report did not arrive at the Center until about 10:16 p.m. on October 1, as shown by the fax date stamp, which was after the Center closed at 7:00 p.m.

Dr. Kleinman did not work at the Center again until October 8, as he was not scheduled to work until then. Other physicians, however, were on duty or on call at the Center between October 1 and October 8, 2001. On October 8, 2001, Powell came to the Center at 7:30 p.m. for followup of the MRI results, at which time Dr. Kleinman first became aware of the MRI report, which reflected a mass or herniated nucleus pulposus at T8-9. Dr. Kleinman immediately referred Powell to an orthopedist, Dr. Timothy Watson. Powell sought no care or treatment from Dr. Kleinman after the October 8 visit.

*This Lawsuit*

Powell thereafter sued Drs. Kleinman and Levin, as well as the Center, alleging they undertook employment to diagnose and provide Powell treatment and proper medical care, but they lacked the necessary knowledge and skill to properly care for his condition and were negligent and unskillful in the diagnosis, treatment and prescription procedures used in treating his condition. The complaint specifically alleges that defendants negligently diagnosed, failed to diagnose and failed to treat an injury to his spine so as to cause him permanent injury and damage.

*The Summary Judgment Motion*

Dr. Kleinman moved for summary judgment based on Powell's inability to establish he breached the standard of care and caused or contributed to his injuries. In support of the motion, he presented his own declaration, as well

as the declaration of Dr. Lawrence Dardick, a board-certified family practice physician. Dr. Kleinman related in his declaration the facts regarding Powell's care and treatment at the Center from his first visit on September 17, 2001, through his final visit on October 8, 2001, some of which are set forth above. Dr. Kleinman opined that based on the facts and his professional education, training and experience, the care and treatment he provided to Powell at all times met the applicable standard of care, the diagnoses he made were correct and reasonable given the history provided, and he undertook and implemented timely and appropriate steps for consultation request or referral to FCH on September 23, 2001, and to a back specialist on October 8, 2001. He further opined that the care and treatment he rendered Powell did not cause or contribute to Powell's alleged injuries or damages.

Dr. Dardick, who reviewed the medical records, declarations, and depositions in the case, summarized the facts disclosed by the medical records. Dr. Dardick opined that Dr. Kleinman's chart and progress notes appeared to reflect adequate documentation of Powell's September 17, 2001 visit, and based on Powell's chief complaint, history and physical examination, his diagnosis and treatment plan were reasonable. Dr. Dardick further opined that it was a reasonable treatment plan to refer Powell to FCH to rule out spinal cord compression on September 23, 2001. With respect to Dr. Kleinman's October 1, 2001 examination of Powell, Dr. Dardick opined Dr. Kleinman's management of Powell was appropriate. Finally, Dr. Dardick opined it was reasonable for Dr. Kleinman to immediately refer Powell to Dr. Watson on October 8, 2001. Dr. Dardick concluded that based on the facts, his review of the medical records and deposition transcripts, and his professional education, training and experience, in his opinion Dr. Kleinman's care and treatment of Powell at all times met the applicable standard of care, and there were no facts in the documents he reviewed that indicated Dr. Kleinman violated the standard of care or caused Powell's alleged injuries.

*Powell's Opposition to the Motion*

In opposition to the motion, Powell presented the declaration of Dr. Daniel W. Meub, a board-certified neurosurgeon who stated he was familiar with the applicable standard of care. Dr. Meub explained the applicable standard of care in paragraph 10: "The standard of care dictates that, when a patient presents with symptoms of weakness, the physician should have a high suspicion of the spinal cord being compromised. The standard of care further dictates that when spinal cord compression is suspected an MRI must be ordered on an emergent basis, i.e. STAT. Being ordered STAT, the MRI must be performed, read and the results thereof must be acted upon immediately. A physician with knowledge of an MRI having been ordered with Powell's symptoms must follow-up for timely results of

the MRI and must act on its findings—i.e. with immediate referral to a neurosurgeon for surgical intervention. When a spinal cord is compromised, such as Powell's was, surgical intervention is mandated by the standard of care."

Based on his review of the medical records, declarations, and depositions in this case, Dr. Meub opined that Dr. Kleinman breached the standard of care in three different ways. First, he opined in paragraph 9: "It is my opinion that Dr. Kleinman fell below the standard of care in his care and treatment of Powell. The record clearly indicates that by September 19, 2001, Powell needed help walking which is indicative of the beginning stages of weakness due to spinal compromise. In all medical probability, Powell also had indicators of weakness on September 17, 2001, when Dr. Kleinman first saw him, that Dr. Kleinman did not test for weakness, did not discover weakness, or failed to note findings of weakness as a part of his chart—any of which was below the standard of care."

Second, Dr. Meub opined in paragraph 11: "On October 1, 2001, Powell presented to Dr. Kleinman. In that visit, Dr. Kleinman was aware that Powell had an MRI on September 27, 2001, and that he had no information concerning the results of the MRI when he saw Powell on that date. It was below the standard of care for Dr. Kleinman not to have taken any steps to ascertain the results of the MRI on October 1, 2001 when Powell presented with continuing symptoms."

Lastly, Dr. Meub opined in paragraph 12: "It was below the standard of care for Dr. Kleinman to assume that the staff at Fresno Community Hospital had tested for cord compromise without any confirmation thereof." Dr. Meub concluded in paragraph 13: "It is medically probable that Dr. Kleinman's care and treatment caused injury to Powell that Powell would not have sustained if his condition had been . . . ."[1]

*Dr. Kleinman's Reply*

Along with his reply brief, Dr. Kleinman filed written objections to Dr. Meub's declaration. Dr. Kleinman objected to Dr. Meub's opinions in paragraphs 9 through 12 that Dr. Kleinman breached the standard of care, on various grounds, including hearsay, lack of foundation, speculation, contrary to proof and failure to cite admissible supporting evidence. In addition, Dr. Kleinman submitted portions of the depositions of Powell, Dr. Kleinman and Dr. Levin, and a September 17, 2001 note from Powell's chart which was

---

[1] We note that paragraph 13 ends with the words "had been" and the sentence is not completed in the declaration.

an exhibit to Dr. Kleinman's deposition, to show they contradicted assertions made in Dr. Meub's declaration.

*The Trial Court's Ruling*

At the end of the hearing on Dr. Kleinman's motion, the court adopted its tentative ruling granting the motion for summary judgment as its order. The court sustained Dr. Kleinman's objections to Dr. Meub's declaration. Specifically, with respect to paragraph 9, the court found Dr. Meub's assumption that Powell was suffering from weakness on September 17 was without foundation in fact and contrary to the evidence before the court. The court pointed out that since the only admissible evidence regarding Powell's strength on September 17, namely Dr. Kleinman's declaration, showed Powell was not suffering weakness on September 17, as Dr. Kleinman stated that Powell's sensation and strength were intact on that date, the facts did not support Dr. Meub's assumption. The court further found that Dr. Meub's opinions in paragraph 10 were also based on the flawed assumption that Powell had symptoms of weakness on September 17, and therefore Dr. Kleinman should have suspected spinal cord compromise. Since the assumption was not supported by the evidence, the court found the conclusions in paragraph 10 were inadmissible speculation.

With respect to Dr. Meub's opinion in paragraph 11 that it was below the standard of care for Dr. Kleinman not to have taken any steps to ascertain the MRI results on October 1, the court stated the evidence Dr. Meub relied on did not support this fact. Instead, the court noted the evidence was silent as to what Dr. Kleinman did or did not do to learn the results of the MRI. The court concluded: "Thus, it appears that Meub has speculated that Kleinman did not make any effort to obtain the MRI results. Again, speculation is not a valid basis for an expert opinion. Therefore, the court intends to sustain [Dr. Kleinman]'s objections to paragraph 11 of Meub's declaration."

The court also sustained Dr. Kleinman's objection to paragraph 12 of Dr. Meub's declaration, in which he stated it was below the standard of care for Dr. Kleinman to assume FCH had tested for spinal cord compromise. The court noted that Dr. Meub did not explain why this was below the standard of care and instead simply made the assertion without any supporting reasoning or facts. Finally, with respect to paragraph 13, in which Dr. Meub stated Dr. Kleinman's care and treatment caused Powell injury, the court explained that this conclusion is unsupported, as it relies upon the other conclusions in Dr. Meub's declaration that are without factual or logical support. On that basis, the court stated it was sustaining Dr. Kleinman's objections to that paragraph. The court reasoned that without the opinions expressed in paragraphs 9 through 13 of Dr. Meub's declaration, Powell had not submitted any

evidence showing Dr. Kleinman's treatment fell below the standard of care or caused him injury, and therefore Dr. Kleinman was entitled to summary judgment.

In October 2005 Powell filed a notice of appeal, but his appeal was from the nonappealable order granting the summary judgment motion. (See *Jordan v. Malone* (1992) 5 Cal.App.4th 18 [6 Cal.Rptr.2d 454]; *Modica v. Merin* (1991) 234 Cal.App.3d 1072 [285 Cal.Rptr. 673].) For this reason, we advised the parties we were considering dismissing the appeal without prejudice to either party's right to procure a judgment. A judgment was filed with this court on March 29, 2007, along with the parties' stipulation that the judgment be added to the record on appeal. Upon receipt of the judgment, we deem the notice of appeal as taken from the later filed judgment. (*Prison Law Office v. Koenig* (1986) 186 Cal.App.3d 560, 564, fn. 4 [233 Cal.Rptr. 590] [summary judgment]; see Cal. Rules of Court, rule 8.104(e).)

## DISCUSSION

### I. *Standard of Review*

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) We independently review the record and apply the same rules and standards as the trial court. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925 [68 Cal.Rptr.2d 571].) The trial court must grant the motion if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

In performing our independent review of a defendant's summary judgment motion, we apply the rules pertaining to summary judgment procedure. A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is an affirmative defense to that cause of action. (Code Civ. Proc., § 437c, subd. (*o*); *Aguilar, supra*, 25 Cal.4th at p. 850.) If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence, and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, 25 Cal.4th at p. 849.)

In determining whether the parties have met their respective burdens, the court must "consider all of the evidence" and "all of the inferences reasonably drawn therefrom," and "must view such evidence [citations] and such

inferences [citations] . . . in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at pp. 844–845.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.) Consequently, a defendant moving for summary judgment must "present evidence that would require . . . a trier of fact *not* to find any underlying material fact more likely than not." (*Id.* at p. 845.)

Although our review of a summary judgment motion is de novo, we review the trial court's final rulings on evidentiary objections by applying an abuse of discretion standard. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [23 Cal.Rptr.3d 915]; *Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 467 [25 Cal.Rptr.3d 627].)

## II. *Medical Malpractice*

Medical providers must exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances. (*Barris v. County of Los Angeles* (1999) 20 Cal.4th 101, 108, fn. 1 [83 Cal.Rptr.2d 145, 972 P.2d 966].) Thus, in " 'any medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." [Citation.]' " (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606 [90 Cal.Rptr.2d 396] (*Hanson*).)

Here, Dr. Kleinman moved for summary judgment on the grounds that Powell could not establish either that he breached the duty of care or caused Powell injury. The trial court concluded that in moving for summary judgment, Dr. Kleinman satisfied his initial burden of production on these issues, which Powell does not challenge on appeal. Thus, the burden shifted to Powell to raise a triable issue of material fact. Powell attempted to do this by presenting the declaration of Dr. Meub, who opined that Dr. Kleinman breached the standard of care and caused Powell injury by (1) failing to test for weakness, discover weakness or note findings of weakness in Powell's chart on September 17, 2001; (2) failing to take steps to ascertain the MRI results on October 1, 2001, when Powell presented with continuing symptoms; and (3) assuming the staff at FCH had tested for cord compromise without confirming it had done so. Because the court sustained Dr. Kleinman's evidentiary objections and excluded Dr. Meub's declaration, we review the court's ruling for abuse of discretion. In evaluating the court's

ruling, we take guidance from cases analyzing the sufficiency of medical experts' summary judgment declarations.

### A. *Expert Evidence Requirements*

■ Whenever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff. (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977 [263 Cal.Rptr. 878].) " 'California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.' " (*Id.* at pp. 984–985.)

■ "Cases dismissing expert declarations in connection with summary judgment motions do so on the basis that the declarations established that the opinions were either speculative, lacked foundation, or were stated without sufficient certainty. [Citations.] . . . It is sufficient, if an expert declaration establishes the matters relied upon in expressing the opinion, that the opinion rests on matters of a type reasonably relied upon, and the bases for the opinion. [Citation.]" (*Sanchez v. Hillerich & Bradsby Co.* (2002) 104 Cal.App.4th 703, 718 [128 Cal.Rptr.2d 529] (*Sanchez*).) An expert's opinion, however, "may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact. [Citation.] Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based. [Citations.]" (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 [11 Cal.Rptr.3d 653] (*Bushling*).)

■ Simply because the defendant doctor provides an unopposed declaration by an expert does not necessarily mean the court should grant summary judgment. In *Kelley v. Trunk* (1998) 66 Cal.App.4th 519 [78 Cal.Rptr.2d 122] (*Kelley*), Division Seven of the Second District Court of Appeal held that "a defendant doctor is not entitled to obtain summary judgment based on a conclusory expert declaration which states the opinion that no malpractice has occurred, but does not explain the basis for the opinion." (*Id.* at p. 521.) In that case, the plaintiff received treatment in an emergency room for a laceration to his arm. The following day, the plaintiff's friend spoke on the

telephone with a doctor who was on call for the plaintiff's primary care physician, and told him the plaintiff had run out of pain medication and was in pain. The on-call doctor ordered a refill of the pain medication and suggested the plaintiff see his primary care physician when the physician returned in three or four days. Eventually, the plaintiff saw his primary care physician, who referred him to an orthopedic specialist, who in turn performed surgery. The plaintiff sued both the on-call doctor and his primary care physician for malpractice. (*Ibid.*)

The on-call doctor brought a summary judgment motion supported by an expert declaration from another doctor, in which the expert listed his credentials and the medical records he reviewed, recited the facts of the case, and stated his opinion that the defendant at all times acted within the standard of care. (*Kelley, supra,* 66 Cal.App.4th at p. 522.) On appeal from the trial court's grant of summary judgment, the appellate court concluded the declaration was insufficient to carry the defendant's burden in moving for summary judgment. (*Id.* at p. 524.) In so concluding, the court noted that "an opinion unsupported by reasons or explanations does not establish the absence of a material fact issue for trial, as required for summary judgment . . . ," and "an expert opinion is worth no more than the reasons upon which it rests." (*Ibid.*) Since the expert's declaration did not address what the court viewed to be the crucial issues in the case, which included why surgery was necessary, whether a reasonable doctor would have recognized the possibility of severe complications when the plaintiff's friend spoke with the on-call doctor, and whether earlier intervention would have mitigated the plaintiff's injury, the court concluded that "[w]ithout illuminating explanation, it was insufficient to carry [the doctor's] burden in moving for summary judgment." (*Ibid.*) As the court explained, "[i]t is not our intent to disparage either the summary judgment procedure, or its appropriate use in malpractice cases. The procedure is a long-established and important part of our civil system. Summary judgment is appropriate in every case where the statutory standard is met, and the absence of material issues for trial established. However, that standard is not satisfied by laconic expert declarations which provide only an ultimate opinion, unsupported by reasoned explanation." (*Id.* at pp. 524–525.)

Subsequently, Division One of the Second District Court of Appeal, in *Hanson, supra,* 76 Cal.App.4th 601, reversed a summary judgment in favor of the defendant surgeons because it found the declaration of the plaintiff's expert was sufficient to raise a triable issue of fact as to breach of duty and causation. (*Id.* at p. 606.) The plaintiff alleged he had suffered nerve damage as a result of spinal cord surgery. The appellate court concluded plaintiff's expert's declaration, which the trial court found lacked a factual basis, was "more than adequate" to satisfy the plaintiff's burden on summary judgment. (*Id.* at p. 607.) The court explained that "specific factual breaches of duty

[were] clearly asserted" in the plaintiff's expert's declaration, such as the "defendants failed to investigate bleeding at the time of the surgery, which investigation may have led them to perform a laminectomy"; defendants failed to return the plaintiff to surgery after he was in the recovery room to determine why he had symptoms of nerve injury; and "defendants' failure to diagnose epidural hematoma prior to discharge from the hospital fell below the applicable standard of care." (*Ibid.*) The court concluded these factual breaches of duty were sufficient to raise triable issues on the element of breach of duty. (*Ibid.*)

With respect to causation, the *Hanson* court noted the plaintiff's expert's declaration stated the plaintiff "suffered nerve damage during the surgery and that the care defendants provided was a cause of his injuries. Although the style of the [expert's] declaration is at times a bit obtuse, [the plaintiff] is entitled to all favorable inferences that may reasonably be derived from that declaration. These inferences include a reading of the declaration to state that the nerve damage [the plaintiff] suffered during surgery was caused by the conduct of [the] defendants, which conduct fell below the applicable standard of care. Nothing more was needed." (*Hanson, supra,* 76 Cal.App.4th at pp. 607–608.) In so concluding, the *Hanson* court expressly declined to use *Kelley,* which it characterized as suggesting that "even on summary judgment, an expert's declaration must set forth in excruciating detail the factual basis for the opinions stated therein . . . ," finding that approach to be unsupported. (*Hanson, supra,* at p. 608, fn. 6.)

We, however, can reconcile *Kelley* and *Hanson.* The court in *Kelley* was considering the sufficiency of the declaration of the defendant's expert *in support* of the defendant's motion for summary judgment. In such cases, the defendant "bears the burden of persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra,* 25 Cal.4th at p. 845, fn. omitted.) Thus, the *Kelley* court was considering the burden of production to make a prima facie showing of the nonexistence of any genuine issue of material fact. To meet such a burden, the *Kelley* court concluded the declaration of the defendant's expert had to be detailed and with foundation. (*Kelley, supra,* 66 Cal.App.4th at p. 524.) In contrast, the court in *Hanson* was considering the sufficiency of the declaration of the plaintiff's expert in *opposition* to the defendant's summary judgment motion. In such a case, the declaration submitted by the plaintiff did not have to be detailed, was entitled to all favorable inferences and was deemed sufficient to defeat the summary judgment motion. (*Hanson, supra,* 76 Cal.App.4th at pp. 607–608.)

We conclude that both the *Kelley* and *Hanson* courts properly applied the rule that, when considering the declarations of the parties' experts, we

liberally construe the declarations for the plaintiff's experts and resolve any doubts as to the propriety of granting the motion in favor of the plaintiff. (See, e.g., *Zavala v. Arce, supra*, 58 Cal.App.4th at p. 935.)[2] Accordingly, we apply this well-settled rule of evidence when considering Powell's expert's declaration.

### B. *Breach of Duty and Causation*

Powell contends Dr. Meub's declaration gives rise to four triable issues of fact as to breach of duty and is sufficient to create a triable issue of fact as to causation. Dr. Meub's opinions on the standard of care are contained in paragraphs 9 through 12 of his declaration, and his opinion on causation is contained in paragraph 13. We address each purported breach and the issue of causation in turn.

With respect to paragraph 9, the court found the facts did not support Dr. Meub's opinion that Dr. Kleinman should have suspected spinal cord compression when he first saw Powell on September 17. As the court explained, Dr. Meub's opinion was based on his assumption that "in all medical probability" Powell was showing signs of weakness on September 17 because Powell needed help walking on September 19. Dr. Kleinman, however, stated in his declaration that he performed a physical examination of Powell on September 17 and his "[s]ensation and strength were intact." In rendering his opinion that Dr. Kleinman breached the standard of care on September 17, Dr. Meub did not point to any evidence in the record to show Powell exhibited signs of weakness on that date, instead relying only on his assumption that this was so. Given Dr. Kleinman's statement that Powell's strength was intact, Dr. Meub's assumption, even one based on a "medical probability," is nothing more than a statement that Dr. Kleinman could have breached the standard of care *if* Powell showed signs of weakness on September 17. "But, 'an expert's opinion that something *could* be true if certain assumed facts are true, without any foundation for concluding those assumed facts exist' [citation], has no evidentiary value. [Citation.]" (*Bushling,*

---

[2] The cases Dr. Kleinman relies on do not support a different rule. In *Sanchez, supra,* 104 Cal.App.4th 703, the court merely cited *Kelley* for the proposition that an expert declaration is sufficient if it "establishes the matters relied upon in expressing the opinion, that the opinion rests on matters of a type reasonably relied upon, and the bases for the opinion." (*Sanchez, supra,* 104 Cal.App.4th at p. 718.) In *Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108 [8 Cal.Rptr.3d 363] (*Jennings*), the court cited *Kelley* for the proposition that "when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an 'expert opinion is worth no more than the reasons upon which it rests . . . ,' " which it applied to conclude the trial court properly struck an expert witness's trial testimony when the expert's opinions were not supported by a reasoned explanation. (*Jennings, supra,* at pp. 1117, 1119–1120.)

*supra*, 117 Cal.App.4th at p. 510.) For this reason, the court did not err in sustaining Dr. Kleinman's objections to paragraph 9.

Powell next contends paragraph 10 raises a triable issue of fact as to whether Dr. Kleinman breached the standard of care on September 23 by failing to follow up on the MRI Dr. Levin ordered for Powell. Powell reasons that Dr. Meub's statements that a physician who knows an MRI has been ordered for a patient with Powell's symptoms must follow up for timely results, which should be ordered on an emergent basis, support an inference that Dr. Kleinman acted below the standard of care by failing to upgrade the MRI Dr. Levin ordered to "STAT." Dr. Kleinman, however, did just that by referring Powell to FCH. As Dr. Kleinman explained in his declaration, after he examined Powell on September 23, his plan was to rule out spinal cord compression, so he arranged to have Powell seen at FCH, where a neurosurgeon specialist was on call. Dr. Meub fails to explain what other recourse Dr. Kleinman had on September 23 to expedite the MRI, other than to refer Powell to FCH, given that it was a Sunday. Without such facts, Dr. Meub's declaration failed to raise a triable issue of fact on this issue.

■ We take a different view, however, of the trial court's findings as to paragraphs 11 and 12 of Dr. Meub's declaration. With respect to paragraph 11, the trial court found that Dr. Meub's opinion that Dr. Kleinman should have taken steps to ascertain the MRI results on October 1 was inadmissible because it was based on speculation, as there was no evidence that Dr. Kleinman did not make efforts to obtain the MRI results. Dr. Kleinman stated in his declaration that while he was aware on October 1 that the MRI had been performed, the MRI results were "not available" to him and he had no information concerning the results when he saw Powell that day. Dr. Kleinman testified in his deposition that it was his normal practice to call to find out the MRI results "when somebody comes in like this" and he or a staff member may have made such a call. Dr. Kleinman, however, had no independent recollection that a call was in fact made and the Center's notes do not indicate anyone called or attempted to call to ascertain the MRI results at any time between October 1 and 8.[3] Based on the evidence that the Center's notes do not show that a call was made and Dr. Kleinman

---

[3] We note that Powell made a general objection at the hearing on the summary judgment motion to the trial court's consideration of the evidence Dr. Kleinman submitted with his reply, which included this excerpt from Dr. Kleinman's deposition, based on due process concerns, citing *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 [125 Cal.Rptr.2d 499]. The trial court never expressly ruled on this objection. Powell renews the objection on appeal, arguing to the extent the trial court relied on evidence submitted with the reply, it abused its discretion in doing so. Since the trial court failed to rule on the objection, Dr. Meub reviewed Dr. Kleinman's deposition testimony when rendering his opinion on the standard of care, and the testimony creates an issue of fact which defeats summary judgment, Powell is not prejudiced by our consideration of that evidence.

could not remember making a call, Dr. Meub reasonably could infer that Dr. Kleinman did not take steps to ascertain the MRI results. At worst, an issue of fact is created as to whether Dr. Kleinman in fact attempted to obtain the results. In any event, since there is some evidence that Dr. Kleinman did not take steps to obtain the results, Dr. Meub's opinion that he acted below the standard of care in this respect is based on facts supported by the record, contrary to the trial court's finding. Accordingly, the trial court abused its discretion in disregarding this portion of Dr. Meub's declaration.

With respect to paragraph 12, in which Dr. Meub stated that Dr. Kleinman acted below the standard of care by assuming FCH had tested for spinal cord compromise without any confirmation it had done so, the trial court ruled it failed to create a triable issue of fact because Dr. Meub did not support his conclusion with a reasoned explanation as required by the court in *Kelley*, *supra*, 66 Cal.App.4th at page 525. As we explained above, however, the *Kelley* court developed its requirement of a reasoned explanation for expert declarations in *support* of summary judgment. (*Kelley*, *supra*, 66 Cal.App.4th at pp. 521, 524–525.) Since Dr. Meub's declaration is in *opposition* to the summary judgment, it must be liberally construed. (See *Hanson*, *supra*, 76 Cal.App.4th at pp. 606–607.)

Applying a liberal construction to Dr. Meub's declaration, we conclude Powell has raised a triable issue of fact on this issue as well. It is undisputed that Dr. Kleinman assumed FCH had ruled out spinal cord compression on September 23, 2001, because he never received a report or information indicating Powell was experiencing spinal cord compression. As Dr. Meub stated in his declaration, the standard of care dictates that when spinal cord compression is suspected, an MRI must be ordered on an emergent basis, performed, read and the results acted on immediately.[4] Since Dr. Kleinman suspected spinal cord compression as early as September 23, according to Dr. Meub it was below the standard of care to then assume FCH had ruled out spinal cord compression without confirming it had done so. Given the liberal construction accorded an opposing expert's declaration, no further explanation was required. Thus, the trial court erred when it disregarded this portion of Dr. Meub's declaration.

---

[4] This statement was made in paragraph 10 of Dr. Meub's declaration, which the trial court disregarded on the ground it was based on inadmissible speculation. In so finding, the court determined the opinions were based on the assumption that Powell had symptoms of weakness on September 17. We disagree with the trial court's characterization of this paragraph, which merely relates the standard of care that applies when a patient presents with symptoms of weakness. As Dr. Kleinman stated Powell complained of weakness on September 23, in the form of decreased strength, Dr. Meub's opinion on the standard of care contained in paragraph 10 clearly applies to Dr. Kleinman's subsequent actions.

In sum, Dr. Meub's declaration raises at least two triable issues of fact regarding whether Dr. Kleinman acted below the standard of care. Therefore, the trial court erred in concluding no issue of fact was raised.

With respect to causation, Dr. Meub opined that it is medically probable Dr. Kleinman's care and treatment caused Powell injury. The trial court found this opinion was unsupported because Dr. Meub's opinion relied on the conclusions asserted in paragraphs 9 through 12 of his declaration, all of which the court found to be without factual or logical support. Since we have concluded otherwise, namely that Dr. Meub's declaration raises issues of fact with respect to whether Dr. Kleinman breached the standard of care on October 1, Dr. Meub's opinion on causation is adequately supported in his declaration. Dr. Meub opined that when spinal cord compression is suspected, time is of the essence and a physician must order an MRI on an emergent basis and promptly follow up on the results, including referral to a neurosurgeon for surgical intervention. Dr. Meub stated that Dr. Kleinman failed to do that when he assumed FCH had ruled out spinal cord compression and failed to take steps to ascertain the MRI results, which resulted in an unreasonable delay in diagnosing Powell's condition and his receipt of surgical intervention, both of which caused Powell injury.

However obtuse Dr. Meub's declaration may appear, as a party opposing summary judgment, Powell is entitled to *all favorable inferences* that reasonably may be derived from it, which includes a reading of the declaration to state that Powell's injuries were caused by Dr. Kleinman's conduct, which conduct fell below the applicable standard of care. (See *Hanson, supra,* 76 Cal.App.4th at pp. 607–608.) It is reasonable to infer from Dr. Meub's declaration that but for Dr. Kleinman's failure to ascertain the results of the MRI or to determine what treatment Powell received at FCH, the causative factor of the delay in diagnosing and treating Powell's condition would not have occurred. Nothing more was needed to raise a triable issue of material fact as to whether Dr. Kleinman, through the delay, caused Powell's injuries.

The cases Dr. Kleinman relies on do not require a different result. In *Bushling, supra,* 117 Cal.App.4th 493, a patient experiencing shoulder pain after gall bladder surgery sued the doctors and the patient offered declarations from experts that his injury was probably caused by being dropped, by having his arm improperly positioned during surgery, or by having his arm stretched. (*Id.* at p. 510.) The record, however, contained *no evidence* to show any of these facts occurred. Instead, the expert doctors simply assumed the cause from the fact of the injury. (*Ibid.*) The court concluded the expert declarations were therefore insufficient to defeat the defendants' summary judgment

motion. (*Id.* at pp. 510–511.) In contrast here, Dr. Meub's opinion as to causation is based on facts which are supported by the record, as we explained above.

Dr. Kleinman's reliance on *Jennings, supra,* 114 Cal.App.4th 1108 is also misplaced. In *Jennings,* the plaintiff sought recovery for injuries caused by the defendants' failure to remove a retractor which was left in his peritoneal cavity during surgery. (*Id.* at p. 1114.) The trial court, pursuant to Evidence Code section 801, struck the testimony of the plaintiff's expert medical witness on whom the plaintiff relied to show that his postoperative abdominal infection in subcutaneous tissue *outside* the peritoneal wall was caused by a contaminated retractor the defendants left *inside* the peritoneal cavity, although there were no clinical symptoms suggesting the retractor caused any infection within the peritoneal cavity. (*Id.* at pp. 1114–1115.) In upholding the trial court's ruling, the Court of Appeal concluded the plaintiff's expert "never articulated why or how it was more likely than not that the bacteria, after multiplying without any clinical symptoms that ordinarily accompany peritonitis, migrated from the nidus within the peritoneal cavity through the sutured peritoneal wall, the transversalis fascia, the muscle group and the rectus fascia, finally settling into the subcutaneous tissue, while leaving the peritoneal wall intact and leaving behind no trail of inflamed or infected tissue evidencing this migration. Instead, [the expert] substituted a conclusion in place of an explanation, opining '[i]t just sort of makes sense. We have that ribbon retractor and [it's] contaminated, he's infected.' That opinion is too conclusory to support a jury verdict on causation. [Citation.]" (*Jennings, supra,* at p. 1120, fn. omitted.)

In contrast here, when Dr. Meub's declaration is given all favorable inferences, it contains an explanation as to causation, i.e., that Powell would have received a prompt diagnosis and surgical intervention if Dr. Kleinman had not assumed FCH had ruled out spinal cord compression or had taken steps to obtain the MRI results on October 1, and the delay in his diagnosis and treatment caused injuries Powell would not otherwise have sustained.

We conclude that Dr. Meub's opinions are properly considered in opposition to the summary judgment motions. Under the principle of liberal interpretation of evidence offered in opposition to summary judgment, Dr. Meub's opinions create triable issues of fact which preclude summary judgment based on the issues of breach of the duty of care and causation. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065 [225 Cal.Rptr. 203] [counterdeclarations need not prove the opposition's case but only disclose the existence of a triable issue].)

## **DISPOSITION**

The judgment is reversed. Appellant is awarded his costs on appeal.

Levy, Acting P. J., and Dawson, J., concurred.