Filed 11/19/14  Hammontree v. Segal CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DEVIN WESLEY JONES-HAMMONTREE, a Minor, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DMITRI SEGAL,<br><br>    Defendant and Respondent. | D064477<br><br><br><br>(Super. Ct. No. 37-2012-00100381-CU-MM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Mark B. Simowitz for Plaintiff and Appellant.

Schmid & Voiles, Denise H. Greer, Kyle A. Cruse and Robert B. Fessinger for Defendant and Respondent.

In establishing his medical malpractice claim, plaintiff and appellant Devin Wesley Jones-Hammontree (Devin) had the burden of showing that, in treating him, defendant and respondent Dr. Dmitri Segal, a radiologist, acted below the standard of

care *and* that Dr. Segal's error caused him some injury. Because, in response to Dr. Segal's motion for summary judgment, Devin failed to meet that burden, we affirm the trial court's judgment entered on an order granting Dr. Segal's motion.

In support of his motion for summary judgment, Dr. Segal submitted a declaration from an expert who stated Dr. Segal did not act below the standard of care in reading X-rays of Devin's arm and elbow and concluding they showed no acute fractures. The defense expert further concluded that because the X-rays did not show any acute fracture, no further treatment or referral was needed, and, therefore, Dr. Segal's treatment did not cause any injury.

On appeal, Devin concedes there is no direct evidence in the record that any acute fracture of his elbow has ever been diagnosed. Although Devin submitted the declaration of his own expert, who believed the disputed X-rays showed "areas of concern," in the absence of evidence Devin actually suffered a fracture, there is no basis upon which a reasonable trier of fact could conclude Dr. Segal's failure to find a fracture caused Devin any harm. Accordingly the trial court did not err in granting Dr. Segal's motion for summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Elbow Injury*

In September 2008, Devin was 11 years old and complained to his mother about pain in his right arm, which he attributed to an earlier incident in which he had thrown a ball in a game of dodge ball. Devin's mother and guardian ad litem, Trayce Lowe, took Devin to his primary care physician, Dr. Gordon Luan. Lowe told Dr. Luan she was concerned Devin may have broken something. Dr. Luan examined Devin and noted he

2

had a tender spot in the lateral epicondyle region but that his right elbow had a full range of motion. Dr. Luan ordered X-rays and told Lowe that if the X-rays were negative, Devin could engage in any exercise he could handle.

X-rays were performed on Devin's arm, and Dr. Segal read them on September 29, 2008. Dr. Segal reported the X-rays showed no acute fracture or dislocation. Dr. Segal also reported the radial head was aligned with the capitellum; that there was asymmetric ossification of the trochlear and capitellar growth plate; and that there was a small well-circumscribed calcification adjacent to the radial head epiphysis, representing possible old trauma.

In light of Dr. Segal's report, Lowe continued to let Devin play sports. However, Devin continued to complain of pain in his elbow and difficulty fully extending his arm. In February 2009, Devin was once again examined by Dr. Luan. Dr. Luan suspected a tendon injury, and his records indicate he referred Devin to an orthopedist.

Lowe stated that notwithstanding what Dr. Luan's records show, she never received any orthopedic referral from Dr. Luan. Instead, in September 2009, shortly after Lowe enrolled in a Kaiser Permanente (Kaiser) healthcare plan, Devin was examined by a Kaiser orthopedist. The Kaiser orthopedist advised Lowe that Devin would need surgery on his elbow, but that the surgery should wait until Devin's arm had grown more. In 2011, surgery was performed on Devin's elbow and Lowe reported that, following the surgery, Devin continued experience many limitations related to his elbow injury.

There is nothing in the record that sets forth the nature of the injury the Kaiser orthopedist diagnosed or what surgery was performed on Devin's elbow in 2011. Moreover, by way of supplemental briefing we requested, counsel for the parties have

confirmed there is nothing in the record that directly shows Devin's elbow was fractured at the time it was examined in September 2009.

B. *Trial Court Proceedings*

In July 2012, Devin, acting by and through Lowe, filed a malpractice complaint against Dr. Segal and Dr. Luan.[1] The complaint alleged in pertinent part that: "As a proximate result of the negligence of Defendants . . . Plaintiff's fracture of his right elbow went undetected until November 2009." Dr. Segal answered the complaint and filed his motion for summary judgment.

In support of his motion for summary judgment, Dr. Segal relied on the declaration of his expert, a board certified radiologist. The defense expert stated: "Dr. Segal's report of the X-ray of plaintiff's elbow taken on September 29, 2008 was thorough and completed within the standard of care. Dr. Segal properly found that the radial head was aligned with the capitellum. There was asymmetric ossification of the trochlear and capitellar growth plate. A small well-circumscribed calcification adjacent to the radial head epiphysis was noted—possibly old trauma. There was no elbow effusion. These findings support Dr. Segal's conclusion of no acute fracture or dislocation. The conclusion is appropriate and within the standard of care."

The defense expert further stated: "Because there was no acute fracture identified in the X-ray, *no further treatment or referral needed to be recommended by the primary care physician.* Therefore, to a reasonable degree of medical probability, plaintiff's ultimate outcome was not affected in any manner by the care provided by Dr. Segal."

---

[1] Dr. Luan was dismissed as a defendant while the case was pending in the trial court.

4

In opposing Dr. Segal's motion, Devin relied on two declarations. One from Lowe and one from another board certified radiologist. Lowe's declaration stated in pertinent part: "In late 2009 I changed insurance plans and enrolled with Kaiser. I took my son to be seen by the orthopedic department in September 2009. [¶] . . . I was advised . . . that my son needed elbow surgery but that they wanted to wait until his arm grew some more. [¶] . . . In November 2011 my son underwent elbow surgery performed by Dr. Khan. Presently my son has many limitations due to his elbow injury."

Devin's expert reviewed the X-rays Segal had read in 2008 and stated: "With the history of 'trauma,' but no site of pain noted, there are two areas of suspicion: a) The lateral aspect of the unfused radial head, film one, and b) the lateral aspect of the also-unfused humeral epicondyle. Either or both could represent a fracture. [¶] . . . The third (lateral) view is off-center, not a true lateral view (possibly the patient couldn't assume that position); reveals a probable fracture of the radial metaphysis."

Devin's expert then concluded: "[T]he failure to identify the fractures, *if present*, and/or the failure to recommend immobilization pending further examination and evaluation has more likely than not lead to the decrease of range of motion and other complications and limitations plaintiff presently complains of." (Italics added.)

Devin's expert's declaration also faults Segal for failing to have comparative X-rays performed on Devin's left elbow. According to Devin's expert, "[t]his can be important to evaluate for normal variations of epiphyses which can sometimes simulate fractures."

On April 22, 2013, the trial court granted Segal's motion for summary judgment. In granting the motion, the court stated: "Plaintiff has not established a causal link

5

between the alleged actions of Dr. Segal and Plaintiff's indefinite use restrictions. . . . [¶] Plaintiff states that the range of motion loss and use restrictions are due to the surgery. Plaintiff's expert failed to state the purpose for the surgery, and how or if it was related to the injury from September 2008 as opposed to 'the history of trauma' or another event. Given these deficiencies, it is unclear how Dr. Segal's conduct caused injury to Plaintiff."

On May 7, 2013, Devin moved for an order reconsidering the trial court's order granting Segal's motion. Devin argued that his expert's declaration should have been liberally construed, that it supported his theory that the X-ray showed his arm should have been immobilized in 2008, and that the failure to immobilize the arm led to the decrease in range of motion he continued to experience.

On May 9, 2013, a judgment dismissing Devin's claims against Segal was entered.

On August 8, 2013, the trial court denied Devin's motion for reconsideration on multiple grounds. In particular, the trial court noted Devin's expert did not unequivocally conclude Devin had actually suffered a fracture; without proof of a fracture, the trial court found the declaration did not create any triable issue of material fact as to causation.

Devin filed a timely notice of appeal.

DISCUSSION

I

"We review an order granting summary judgment de novo. [Citation.] We independently review the record and apply the same rules and standards as the trial court. [Citation.] The trial court must grant the motion if 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.]

6

"In performing our independent review of a defendant's summary judgment motion, we apply the rules pertaining to summary judgment procedure. A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is an affirmative defense to that cause of action. [Citations.] If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence, and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. [Citations.]

"In determining whether the parties have met their respective burdens, the court must 'consider all of the evidence' and 'all of the inferences reasonably drawn therefrom,' and 'must view such evidence [citations] and such inferences [citations] . . . in the light most favorable to the opposing party.' [Citation.] 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.] Consequently, a defendant moving for summary judgment must 'present evidence that would require . . . a trier of fact not to find any underlying material fact more likely than not.' [Citation.]

"Although our review of a summary judgment motion is de novo, we review the trial court's final rulings on evidentiary objections by applying an abuse of discretion standard." (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 121-122, italics omitted (*Powell*).)

7

In broadly outlining the law of summary judgment, the Supreme Court has stated: "If a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment. In such a case, . . . the 'court should grant' the motion 'and avoid a . . . trial' rendered 'useless' by nonsuit or directed verdict or similar device. [Citations.]" (*Aguilar v. Atlantic Richfield* (2001) 25 Cal.4th 826, 855, fn. omitted.)

II

The principal issue we confront on appeal is the question of causation. In a medical malpractice action, such as this, the plaintiff must be able to show that the defendant acted below the applicable standard of care *and* that, in the absence of the defendant's error, the plaintiff would not have suffered harm. "Liability for medical malpractice is predicated upon a proximate causal connection between the negligent conduct and the resulting injury. [Citation.] '[C]ausation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. [Citations.] That there is a distinction between a reasonable medical "probability" and a medical "possibility" needs little discussion. There can be many possible "causes," indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury.' [Citation.]" (*Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603 (*Dumas*).)

In *Dumas*, the plaintiff alleged that his physicians had been negligent in failing to

8

properly read a chest X-ray and that, as a consequence, they delayed in diagnosing the presence of a malignant lung tumor. At trial, the physicians presented expert evidence that tumors like the one found in the plaintiff are rarely curable, even if diagnosed at a very early stage. In light of that evidence, the physicians argued that the delay in diagnosis did not harm the plaintiff. The trial court gave the jury an instruction that permitted the plaintiff to recover damages from the physicians if an earlier diagnosis would have provided the plaintiff with the possibility of a cure, the possibility of a lengthened life, or the possibility of more comfort. The jury returned a verdict in favor of the plaintiff and, on appeal, the Court of Appeal reversed. The Court of Appeal found that merely proving the *possibility* of a cure or lengthened life did not establish causation. In rejecting the plaintiff's invitation that it adopt the so-called "lost chance" theory of causation, the court stated: "'Relaxing the causation requirement might correct a perceived unfairness to some plaintiffs who could prove the possibility that the medical malpractice caused an injury but could not prove the probability of causation, but at the same time could create an injustice. Health care providers could find themselves defending cases simply because a patient fails to improve or where serious disease processes are not arrested because another course of action could possibly bring a better result. No other professional malpractice defendant carries this burden of liability without the requirement that plaintiffs prove the alleged negligence *probably rather than possibly caused the injury*. . . . We cannot approve the substitution of such an obvious inequity for a perceived one.'" (*Dumas*, *supra*, 235 Cal.App.3d at p. 1608, italics added.)

III

Here, Dr. Segal's expert's declaration was sufficient to support a prima facie case

9

in his favor both on the issues of standard of care *and* causation. As we have noted, Dr. Segal's expert stated that, in reading the X-rays of Devin's elbow, Dr. Segal acted within the standard of care in finding no acute fracture. Importantly, having found no breach of the standard of care, the defense expert further found Dr. Segal's treatment did not *cause* Devin any injury. Unchallenged, the defense expert's opinion would require a judgment in Segal's favor because it defeats two elements of Devin's cause of action: breach of the standard of care and causation. Thus, the defense expert's opinion shifted to Devin the burden of proving that there is a triable issue of fact with respect to *both* of those elements. (See *Powell*, *supra*, 151 Cal.App.4th at pp. 121-122.)

Devin's expert's opinion plainly conflicts with Segal's expert with respect to the standard of care. Although Devin's expert did not find that the X-rays actually disclosed any acute fractures, the expert did find possible fractures in two areas and a probable fracture in another area. According to the expert, those possible and probable fractures required that Devin's arm be immobilized until further diagnostic procedures could be completed. Thus, Devin's expert found a breach of the standard of care in Segal's failure to notice the possible and probable fracture, advise immobilization and conduct the further diagnostic procedures. Arguably then, with respect to the standard of care, Devin's expert created a triable issue of fact.

The failing in Devin's expert's opinion is with respect to the element of causation. Devin's expert found causation only by *assuming* Devin's elbow was in fact fractured and concluding that the failure to immobilize it caused the decrease in range of motion Devin later experienced. However, contrary to Devin's argument on appeal, there is no evidence in the record that will support an inference Devin's elbow was in fact *ever* fractured. As

10

we have noted, Devin's expert only found abnormalities, which suggested the possibility or probability of fractures and the need for follow-up diagnostic procedures. However, Devin has not submitted any medical records from Kaiser or declarations from the doctors who treated him there. Lowe's declaration itself is oddly silent with respect to what the Kaiser doctors actually told her was wrong with Devin's elbow and the nature of the surgery that was eventually performed on her son. This record does not tell us whether Devin was treated for a fracture in his elbow or, as Dr. Luan suspected, an injured tendon.

Although there is no evidence of any fracture in the form of either X-rays that show a fracture or an expert diagnosis of a fracture, Devin nonetheless argues that based on his mother's declaration, evidence of his continuing discomfort and loss of range of motion, the possibilities and probability of fracture identified by his expert, and the fact he later underwent surgery, a trier of fact could infer that he had suffered a fracture. We are compelled to reject this argument. When any number of other conditions, including the possibility identified by Dr. Luan of a torn tendon, might readily explain each of the circumstances Devin relies on, a trier of fact would have to engage in impermissible speculation to conclude that Devin had a fracture at the time Dr. Segal read the X-rays in 2008. (See *Dumas*, *supra*, 235 Cal.App.3d at p. 1603.)

We of course recognize that both in the trial court and on appeal, a plaintiff opposing a motion for summary judgment is entitled to the benefit of the rule that "when considering the declarations of the parties' experts, we liberally construe the declarations for the plaintiff's experts and resolve any doubts as to the propriety of granting the motion in favor of the plaintiff. [Citation.]" (*Powell*, *supra*, 151 Cal.App.4th at pp. 125-126, fn.

omitted.)  Were there any evidence in the record here that Devin had suffered a fracture of his elbow in the areas of concern identified by his expert, this rule would plainly come into play.  Evidence of an actual fracture would permit a trier of fact to draw the inference that, as suggested by Devin's expert, the failure to immobilize the arm in 2008 increased the harm Devin thereafter suffered.  (See, e.g., *Id.* at pp. 128-129 [obtuse declaration from the plaintiff's expert nonetheless sufficient to defeat summary judgment where, under liberal construction, declaration sets forth theory of both treatment below the standard and causation].)  However, as we have discussed, there is simply no evidence Devin suffered a fractured elbow.  Without such evidence, even the most liberal interpretation of his expert's declaration does not show that Segal's treatment caused Devin any harm.

In sum then, the trial court did not err in granting Segal's motion for summary judgment.

DISPOSITION

The judgment is affirmed.  Dr. Segal to recover his costs of appeal.

_____

BENKE, Acting P. J.

WE CONCUR:


_____

HUFFMAN, J.


_____

NARES, J.

12