Filed 8/12/16  Hays v. Covenant Care La Jolla CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HELENA HAYS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COVENANT CARE LA JOLLA, LLC,<br><br>    Defendant and Respondent. | D068249<br><br><br>(Super. Ct. No.<br> 37-2012-00103075-CU-PN-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hays, Judge.  Reversed and remanded with directions.

Stephen F. Lopez for Plaintiff and Appellant.

Giovanniello Law Group, Alexander F. Giovanniello, Karen A. Bocker and Danielle M. VandenBos for Defendant and Respondent.

Plaintiff Helena Hays appeals a judgment entered after the trial court granted a motion for summary judgment filed by defendant Covenant Care La Jolla, LLC, doing business as La Jolla Nursing and Rehabilitation Center (Center), in her professional negligence action against it.  On appeal, Hays contends: (1) Center did not meet its initial

burden of production to make a prima facie showing she could not establish a professional negligence cause of action against it; and (2) if it did meet that burden, the trial court nevertheless erred by sustaining Center's evidentiary objections to the declaration of her expert and concluding there were no triable issues of material fact that would preclude summary judgment for Center. Because, as we explain below, the court erred by sustaining Center's evidentiary objections and concluding there were no triable issues of material fact on the professional negligence cause of action, we reverse the summary judgment for Center.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2011, Hays was admitted to Sharp Memorial Hospital (Sharp). She complained of increasing severity of generalized weakness, nausea, inability to ambulate, dysuria, suprapubic pain, and a low-grade fever. Sharp staff noted she was malnourished, weighed 130 pounds, and had lost five percent or more of her weight in the past month. She had been consuming at least 50 percent fewer calories than usual and felt very lethargic and weak. She was diagnosed as having a urinary tract infection. She was given fluids and Rocephin intravenously, insulin, a diabetic diet, physical therapy, and her usual medications. On June 9, Sharp staff noted Hays had a Stage I pressure ulcer on her left heel, and her gluteal cleft and perianal area were red and denuded.

On June 11, Hays was discharged by Sharp and admitted to Center. Center staff found she had a Stage III wound to her coccyx, a Stage I wound to her left heel, a Stage I wound to her right buttock, and a Stage I wound to her left buttock. Center staff implemented orders for physical therapy, occupational therapy, a podiatry evaluation, and

2

a nutritional screening. From June 11 through June 14, she consumed 50 to 75 percent of her meals and lost weight. By July 5, her coccyx wound had increased in size despite the staff's treatment and weekly monitoring/measuring of it. The staff thereafter obtained a wound culture and began to change her dressings twice a day. By July 11, her coccyx wound had further increased in size and depth. The prior wound culture showed it was infected and a physician prescribed Levaquin for her. Hays continued to have poor nutritional intake. On July 13, Hays was examined by a wound care physician, who noted that she was currently using a low air loss mattress but did not like to lie on her side because of chronic back pain. The physician performed a debridement of her sacrococcygeal pressure ulcer. On July 18, Center staff found Hays's coccyx wound had progressed to a Stage IV wound. On July 20, a gastronomy tube was surgically placed in her at Sharp and tube feedings were thereafter implemented by Center staff.

On July 22, Center staff and Hays's daughter agreed Hays would benefit from more aggressive treatment at Kindred Hospital San Diego (Kindred). On that day, Hays was discharged from Center and admitted to Kindred for continuing wound care. Center's discharge diagnoses included a failure to thrive, dysphagia, urinary tract infection, and a decubitus (or pressure) ulcer. Despite Kindred's treatment methods, Hays's Stage IV coccyx wound increased in size from the time of her admission to the time of her discharge.

On August 28, 2012, Hays filed the instant action against Center and Sharp, alleging causes of action against Center for professional negligence and elder abuse. Her professional negligence cause of action alleged that she was admitted to Center with a

3

Stage III decubitus ulcer on her coccyx/sacral area and Center neglected to care for her ulcers in a proper manner, including a failure to place her on a preventive mattress, failure to provide immediate and expert wound care treatments to prevent progression of multiple decubitus sites, and failure to provide proper dietician services. She alleged that Center's failure to use the degree of care and skill ordinarily used by medical providers in San Diego County caused her to become gravely ill and develop more serious decubitus ulcers that resulted in extreme pain and suffering and economic harm.

Center filed a motion for summary judgment or, in the alternative, summary adjudication of issues, arguing Hays could not establish either her professional negligence cause of action or elder abuse cause of action against it. In support of its motion, Center submitted a declaration of Karen Josephson, M.D. (a gerontology expert), and a separate statement of undisputed material facts, and lodged with the court certain exhibits, including documents that Josephson reviewed in forming her expert opinions.

Hays opposed Center's motion and submitted in support of her opposition a response to its separate statement and a declaration of Luis Navazo, M.D., a wound care expert. She argued Center had not met its burden to show she could not establish her professional negligence and elder abuse causes of action and, in any event, there were triable issues of material fact that precluded summary judgment for Center because the opinions of Center's expert (Josephson) and her expert (Navazo) conflicted on the issue of Center's alleged breach of the applicable standard of care.

Center replied to Hays's opposition, arguing the declaration of Hays's expert, Navazo, lacked any evidentiary value because Hays did not present the evidence that he

4

reviewed in forming his opinions and therefore his declaration lacked a proper foundation. Center also filed 14 evidentiary objections to portions of Navazo's declaration.

On November 10, 2014, after hearing arguments of counsel one month earlier, the trial court issued an order granting Center's motion for summary judgment. In so doing, the court first sustained in part and overruled in part Center's evidentiary objections to Navazo's declaration.[1] The court then concluded Center had met its burden to show Hays could not establish the essential elements of her two causes of action against it and that Hays did not show there were triable issues of material fact regarding those essential elements. The court concluded Hays had not shown there was a triable issue of material fact on the question of whether Center's conduct fell below the applicable standard of care. It further concluded the opinions of Hays's expert (Navazo) were conclusory, lacked adequate foundation, and did not establish the appropriate causal connection to Center's alleged conduct.[2] On December 1, 2014, the trial court entered a judgment of dismissal for Center. Hays timely filed a notice of appeal.

---

[1] The trial court expressly overruled Center's objection No. 1 and expressly sustained its objection Nos. 2 through 8. By not expressly sustaining Center's objection Nos. 9 through 14, we presume the court implicitly overruled those objections.

[2] On November 25, 2014, Hays filed a motion for reconsideration of the trial court's order granting Center's motion for summary judgment. On April 24, 2015, the court issued an order denying her motion for reconsideration, concluding that its prior entry of judgment for Center (on December 1, 2014) deprived it of jurisdiction to reconsider its order granting Center's motion for summary judgment. Because Hays does not substantively challenge on appeal the court's order denying her motion for reconsideration, we do not address whether the court erred in denying that motion.

DISCUSSION

I

*Summary Judgment Standard of Review*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; see *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

*Aguilar* clarified the standards that apply to summary judgment motions under Code of Civil Procedure section 437c.[3] (*Aguilar*, *supra*, 25 Cal.4th at pp. 843-857.) Generally, if all the papers submitted by the parties show there is no triable issue of material fact and the " 'moving party is entitled to a judgment as a matter of law,' " the court must grant the motion for summary judgment. (*Aguilar*, at p. 843, quoting § 437c, subd. (c).) Section 437c, subdivision (p)(2), states:

> "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or

---

[3]    All statutory references are to the Code of Civil Procedure.

more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto."

*Aguilar* made the following observations:

"First, and generally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . .

"Second, and generally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. . . .

"Third, and generally, how the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial. . . . [I]f a defendant moves for summary judgment against . . . a plaintiff [who would bear the burden of proof by a preponderance of the evidence at trial], [the defendant] must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not--otherwise, *he* would not be entitled to judgment *as a matter of law*, but would have to present *his* evidence to a trier of fact." (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851, fns. omitted.)

*Aguilar* stated:

"To speak broadly, all of the foregoing discussion of summary judgment law in this state, like that of its federal counterpart, may be reduced to, and justified by, a single proposition: *If a party moving*

7

*for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment.* In such a case, . . . the 'court should grant' the motion 'and avoid a . . . trial' rendered 'useless' by nonsuit or directed verdict or similar device." (*Aguilar*, *supra*, 25 Cal.4th at p. 855, italics added.)

"[E]ven though the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, it must nevertheless determine what any evidence or inference *could show or imply to a reasonable trier of fact*. . . . In so doing, it does not decide on any finding of its own, but simply decides what finding such a trier of fact could make for itself." (*Aguilar*, *supra*, 25 Cal.4th at p. 856.) "[I]f the court determines that all of the evidence presented by the plaintiff, and all of the inferences drawn therefrom, show and imply [the ultimate fact] *only as likely as* [not] *or even less likely*, it must then grant the defendants' motion for summary judgment, even apart from any evidence presented by the defendants or any inferences drawn therefrom, because a reasonable trier of fact could not find for the plaintiff. Under such circumstances, the [factual] issue is not triable—that is, it may not be submitted to a trier of fact for determination in favor of either the plaintiff or the defendants, but must be taken from the trier of fact and resolved by the court itself in the defendants' favor and against the plaintiff." (*Id.* at p. 857, fn. omitted.)

"On appeal, we exercise 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' [Citation.] 'The appellate court must examine only papers

8

before the trial court when it considered the motion, and not documents filed later. [Citation.] Moreover, we construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it.' " (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201-1202.) Although we generally review de novo, or independently, a trial court's ruling on a motion for summary judgment, we apply the abuse of discretion standard in reviewing the trial court's rulings on a party's evidentiary objections. (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122 (*Powell*); *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

II

*Professional Negligence Cause of Action Against Center*

Hays contends the trial court erred by concluding Center met its initial burden of production to make a prima facie case showing she could not establish a cause of action for professional negligence against it. She also contends that if Center met its burden of production, the court nevertheless erred by sustaining Center's evidentiary objections to portions of Navazo's declaration and concluding there were no triable issues of material fact that precluded summary judgment for Center.[4]

---

4    During oral argument below, Hays's counsel, in effect, conceded the trial court correctly granted Center's motion for summary adjudication of her cause of action for elder abuse, stating: "I wouldn't disagree with the summary adjudication on the elder abuse [cause of action]." Furthermore, on appeal Hays does not present any substantive argument challenging the court's grant of Center's motion for summary adjudication on her elder abuse cause of action. Because Hays has, in effect, waived or forfeited any challenge to that specific ruling, we affirm that part of the trial court's order.

A

*Center's initial burden of production; Josephson's declaration.* In moving for summary judgment or, in the alternative, summary adjudication of issues, Center argued Hays could not establish her professional negligence cause of action against it. In support of its motion, Center submitted a declaration of its expert, Josephson, and lodged with the court certain exhibits, including those documents Josephson reviewed in forming her expert opinions.

In her declaration in support of Center's motion, Josephson stated that in forming her opinions she reviewed Hays's complaint and her medical records maintained by Sharp for her admission from June 8, 2011, through June 14, 2011, by Center, and by Kindred, which records were included in Exhibit 10. Center lodged with the trial court certain exhibits, including Exhibit 10, which it described as "[a] compact disc with true and correct copies of all medical records[,] [d]epositions, and other documents reviewed by [Josephson]" and itemized 16 categories of documents that she reviewed (e.g., Hays's medical records from Sharp, Center, and Paradise Valley Hospital). In her declaration, Josephson stated: "Based upon my review of the records, it is my opinion, to a reasonable degree of medical probability[,] that [Center] staff did not cause [Hays] to develop a pressure ulcer on her heels or coccyx, or cause the coccyx wound to progress to a Stage IV classification. It is my opinion, to a reasonable degree of medical probability[,] that [Center] maintained the standard of care at all times in its treatment of [Hays], did not abuse or neglect her, and did not cause her to suffer any injury." Josephson stated she based her opinions, in part, on facts found in Hays's medical records and described in

10

detail those underlying facts. Josephson noted that on Hays's admission to Sharp on June 8, 2011, she was malnourished, had a decreased caloric intake, and had uncontrolled diabetes. She also noted that on Hays's discharge from Sharp and admission to Center, Hays had an open Stage III coccyx wound. Josephson stated that Center's medical records showed Center's nursing staff complied with physician orders for treatment of Hays's coccyx wound by cleaning it, applying an ointment, and covering it with a dressing daily or as needed, and by repositioning her every two hours and placing her on a low air loss mattress. She also noted Center's efforts to improve Hays's nutrition. She further noted Center's taking of a culture of Hays's coccyx wound and scheduling a consultation with a wound specialist for July 13, 2011. Josephson noted that despite Center's efforts, Hays's coccyx wound progressed to a Stage IV wound and she was discharged by Center and admitted to Kindred on July 22, 2011.

Josephson stated: "It is my opinion, to a reasonable degree of medical probability, that nothing [Center] staff did or did not do caused [Hays] to develop what ultimately became a Stage IV pressure ulcer on her sacrum. Rather, it is my opinion that the wound developed prior to her admission to [Center] due to her compromised condition, consisting of infection, decreased oral intake, low albumin levels, high blood sugar levels and immobility. More specifically, [Hays] suffered from comorbidities such as diabetes mellitus and peripheral arterial disease. In addition, she had significant barriers to wound healing such as her age, poor nutritional intake, and discomfort with repositioning, such that she remained malnourished and needed placement of a gastrostomy tube for nutrition. Consequently, [Hays] had a poor prognosis at the time of her transfer to

11

[Center].  Further, as a result of these conditions, [Hays] developed poor circulation and[,] thus, the downward progression of her coccyx pressure ulcer became inevitable, despite appropriate and/or optimal treatment by [Center] staff."

She further stated: "In my opinion, [Center] provided appropriate interventions and wound treatments as warranted by [Hays's] medical condition. . . .  [¶]  It is my opinion, to a reasonable degree of medical probability[,] that [Center] maintained the standard of care at all times in its treatment and care of [Hays].  Additionally, I find no evidence to support [her] claim that [Center] caused [her] to develop a Stage IV sacral ulcer during her hospitalization or for any of [her] wounds to deteriorate."

Based on our independent review of the record, we conclude Center, by submitting Josephson's declaration and lodging with the trial court the documents on which she, in part, based her medical opinions, met its initial burden of production to make a prima facie showing that Hays could not establish her professional negligence cause of action. (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.)  To prevail on a professional negligence cause of action, a plaintiff must prove that (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; (3) that breach was a legal or proximate cause of the plaintiff's injury; and (4) the plaintiff suffered damages from the defendant's negligence.  (*Powell*, *supra*, 151 Cal.App.4th at p. 122.)  Contrary to Hays's assertion, Josephson's declaration provided sufficient evidence to make a prima facie showing that Hays could not establish the elements of breach of duty and causation.  She stated her expert opinion that Center maintained the standard of care at all times in its treatment of Hays and did not cause her to suffer any

12

injury. Citing other reasons for the progression of Hays's coccyx ulcer to a Stage IV wound, Josephson stated that nothing Center did or did not do caused Hays to develop that Stage IV pressure ulcer. Center carried its burden of production of evidence to make a prima facie showing that Hays could not establish the elements of breach of duty and causation and thus her professional negligence cause of action. (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.)

B

*Hays's burden of production; Navazo's declaration.* Because Center met its burden of production to make a prima facie showing that Hays could not establish the elements of her professional negligence cause of action, the burden shifted to Hays to produce evidence to make a prima facie showing that there exists a triable issue of material fact that precludes summary judgment for Center. (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.) In opposing Center's motion for summary judgment, Hays argued there were triable issues of material fact that precluded summary judgment for Center because the opinions of Center's expert (Josephson) and her expert (Navazo) conflicted on the issue of Center's alleged breach of the applicable standard of care. Hays submitted Navazo's declaration, in which he stated:

> "In forming my opinions in this case, I have reviewed the available records of [Sharp] and [Center] and Paradise Valley Hospital regarding [Hays's] care and treatment commencing in June 2011. I have also reviewed the declaration of [Josephson] submitted by [Center]."

He further stated his opinions were "based upon a number of factors based upon my review of the available records."

13

Navazo stated:

> "Contrary to the opinions of [Josephson], I am of the opinion that the actions of the medical staff and personnel of [Center] for [Hays] *fell below the applicable standard of care* for such treatment in terms of wound prevention and care. It is further my opinion to a reasonable degree of medical probability that while the care provided to [Hays] did not initially cause her decubitus [or pressure] ulcers, *the care after her admission did cause her decubitus ulcer, particularly on her coccyx*[,] *to progress to a stage IV ulcer*, requiring extensive care and treatment and pain and suffering that could have been prevented had [Hays] been properly cared for by the staff and personnel at [Center]." (Italics added.)

He explained that his review of Hays's medical records showed she arrived at Center in relatively good condition regarding her skin integrity with a Braden score of 18, which would require watching but did not indicate any significant problems.[5] He also stated that, contrary to Josephson's assertion, Hays's diabetes appeared to be generally under control, citing records showing 19 of 19 fasting blood sugar tests were less than or equal to 151 during the first 19 days following her admission to Center. He also stated that on her admission to Center Hays was adequately nourished and her weight was appropriate.

Navazo stated his opinion that "Hays['s] skin integrity was manageable during the first two weeks following her admission and *there was no reason other than a lack of a proper plan and the failure to properly care for her in terms of skin integrity that resulted in the decubitus ulcer on her coccyx progressing to a stage IV ulcer*." (Italics added.)

---

[5] Navazo described the "Braden Scale" that is used to assess a patient's skin integrity as consisting of six categories: sensory perception, moisture, activity, mobility, nutrition, and friction/shear. The total score of those six categories can range from 6 to 23, with a lower score showing a higher risk that would indicate the use of (presumably greater) intervention strategies.

14

Noting that Hays's overall condition worsened in terms of nutrition, weight loss, and dehydration and her Braden score declined to as low as 12 within 21 days of her admission to Center, Navazo stated: "*In my opinion this could have been prevented . . . had a proper plan of care and monitoring been prepared and implemented.  The records show no such plan.  The records contain no mention of* [a] *physician at the facility documenting a plan of care for the ulcer.  The attempt to address* [*Hays's*] *declining nutritional status and dehydration, in my opinion*[,] *came too late in her care, resulting in her decline while at* [*Center*].  *This conduct amounted to neglect in her care in my opinion and a lack of care in my opinion.*"  (Italics added.)

Hays asserts on appeal, and Center does not appear to dispute, that, had the trial court not excluded portions of Navazo's declaration, his declaration would have been sufficient to show there were triable issues of material fact on the elements of breach of duty and causation that would preclude summary judgment for Center.  Navazo stated his opinions that Center's care of Hays was below the applicable standard of care regarding wound prevention and care and that its improper care caused her decubitus or pressure ulcer on her coccyx to progress to a Stage IV ulcer, resulting in extensive care and treatment and pain and suffering that could have been prevented.  He further stated his opinion that "there was no reason other than a lack of a proper plan and the failure to properly care for her in terms of skin integrity that resulted in the decubitus ulcer on her coccyx progressing to a stage IV ulcer."  He stated that his review of Center's records did not show a proper plan of care and monitoring been prepared and implemented by Center for Hays.

15

Those expert opinions stated in Navazo's declaration were sufficient evidence, had the trial court not excluded portions of his declaration, to contradict Josephson's opinions, discussed above, and thereby satisfy Hays's burden to produce evidence showing there were triable issues of material fact on the elements of breach of duty and causation that would preclude summary adjudication of her professional negligence cause of action and summary judgment for Center. Therefore, as Hays asserts, the crux of this appeal is whether the trial court erred by excluding portions of Navazo's declaration.

C

*Trial court's exclusion of Navazo's declaration.* Hays asserts the trial court abused its discretion by sustaining in part Center's evidentiary objections to portions of Navazo's declaration and concluding that the lack of his expert opinions precluded her from showing there was a triable issue of material fact that precluded summary judgment for Center. As we explain below, we agree with Hays.

In reply to Hays's opposition to its motion for summary judgment, Center argued Navazo's declaration lacked any evidentiary value because he failed to present the evidence he reviewed in forming his opinions and therefore his declaration lacked a proper foundation. It filed 14 evidentiary objections to Navazo's declaration on grounds of lack of foundation. Center argued the records to which Navazo referred were not properly before the court and therefore his declaration lacked a proper foundation. In its order granting Center's motion for summary judgment, the trial court first sustained in part its evidentiary objections to Navazo's declaration. It sustained Center's objections to the following portions of Navazo's declaration: (1) his statement he had reviewed the

16

available records of Sharp, Center, and Paradise Valley Hospital regarding Hays's care and treatment; (2) his opinion that Center's actions fell below the applicable standard of care regarding wound prevention and care; (3) his opinion that Center's improper care caused her coccyx ulcer to progress to a Stage IV ulcer; and (4) his statement that Hays's skin integrity was in relatively good condition on her admission to Center. However, the court did not expressly sustain, and therefore implicitly overruled, Center's objections to the following portions of Navazo's declaration: (1) his opinion there was no reason other than a lack of a proper plan and the failure to properly care for Hays that resulted in the progression of her decubitus ulcer on her coccyx to a Stage IV ulcer; (2) his opinion that progression to a Stage IV ulcer could have been prevented had a proper plan of care and monitoring been prepared and implemented by Center; (3) his opinion that Center's attempt to address her declining nutritional status and dehydration came too late, resulting in her decline while at Center; and (4) his opinion that Center's conduct amounted to neglect in her care and a lack of care.

Hays asserts the trial court abused its discretion by sustaining Center's objections to portions of Navazo's declaration, as discussed above, on the ground that there was a lack of a proper foundation for his statements and opinions. Center argued below that Navazo's declaration should be excluded as evidence because Hays "failed to furnish the evidence reviewed by her expert." It argued Navazo's statement that he reviewed available information, including medical records of Sharp, Center, and Paradise Valley Hospital, lacked a proper foundation because those records were not properly before the court. It further argued that Navazo's opinions were therefore without evidentiary

17

support and should be disregarded. In sustaining Center's objections to portions of Navazo's declaration, the trial court presumably agreed with Center's arguments and found his declaration lacked a proper foundation because Hays had not submitted copies of the records that he reviewed in forming his opinions. However, in so doing, the court abused its discretion.

In *Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499 (*Shugart*), the defendant physician moved for summary judgment of the medical negligence cause of action against him and submitted copies of plaintiff's medical records and a declaration of an expert stating her opinion that the physician's care met the standard of care and did not cause the plaintiff's injuries. (*Id*. at p. 503.) In opposition to the motion, the plaintiff submitted a declaration of an expert stating his opinion that the physician committed acts below the standard of care and those acts contributed to her injuries. (*Id*. at pp. 503-504.) The trial court granted the physician's motion for summary judgment, concluding the declaration of the plaintiff's expert was deficient and lacking evidentiary value because he failed to refer to the materials on which he relied in forming his opinions. (*Id*. at p. 504.) The court reasoned that the declaration of the plaintiff's expert had no evidentiary value because he did not reference or attach particular materials that he consulted and reviewed in rendering his opinion and the plaintiff did not set forth any medical records. (*Id*. at p. 505.)

On appeal, *Shugart* concluded the trial court erred by finding the declaration of the plaintiff's expert lacked foundation and was inadmissible. (*Shugart*, *supra*, 199 Cal.App.4th at p. 505.) Her expert stated in his declaration that he had reviewed " 'the

18

medical records, deposition transcript, and declarations of [plaintiff].' " (*Ibid*.) His opinions were explained in part by references to notations in her medical records that were already before the court in support of the defendant physician's moving papers. (*Id*. at pp. 505-506.) Accordingly, *Shugart* concluded "the foundational facts and medical records on which [plaintiff's expert] relied as stated in his declaration were before the court to support his expert opinion." (*Id*. at p. 506.) It stated that *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, on which the defendant physician relied, "does not require a party opposing summary judgment to file duplicate copies of the medical records on which the opposing expert relied in forming a disputed expert opinion if they are already before the court in support of the motion." (*Shugart*, at p. 506.) The court further concluded that although the declaration of the plaintiff's expert was "not a model of specificity," it was sufficient to raise triable issues of fact regarding whether the defendant physician's care of the plaintiff met the standard of care in the medical community and whether that care caused her alleged damages. (*Ibid*.) Therefore, it reversed the summary judgment in favor of the defendant physician. (*Id*. at p. 509.)

We conclude that the instant case is similar to *Shugart* in that Center, in support of its motion for summary judgment, lodged with the trial court extensive documents, including Hays's medical records created during her admissions at Sharp, Center, and Paradise Valley Hospital. In opposing Center's motion, Hays submitted Navazo's declaration in which he stated he reviewed the available records of Sharp, Center, and Paradise Valley Hospital, as well as Josephson's declaration, in forming his opinions. Like in *Shugart*, Navazo did not attach to his declaration copies of those records, nor did

19

Hays separately lodge with the court copies of those records.  However, because those records were already before the court when Center lodged them with the court, Hays was not required to separately lodge them with the court or attach them to Navazo's declaration to provide a sufficient foundational basis for his expert opinions.  (*Shugart*, *supra*, 199 Cal.App.4th at p. 506.)

Furthermore, to the extent Center argues Navazo was required to cite to specific pages or dates of those records as support for each statement of fact or opinion, we conclude that the liberal rule of construction of papers opposing a motion for summary judgment applies to preclude a requirement that the opposing party's expert set forth "in excruciating detail" the factual basis for opinions stated in his or her declaration. (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 608, fn. 6 (*Hanson*).)  In *Hanson*, the court noted the declaration of the plaintiff's expert in opposition to the defendants' motion for summary judgment stated the plaintiff "suffered nerve damage during the surgery and that the care defendants provided was a cause of his injuries.  Although the style of the [expert's] declaration is at times a bit obtuse, [the plaintiff] is entitled to all favorable inferences that may reasonably be derived from that declaration.  These inferences include a reading of the declaration to state that the nerve damage [the plaintiff] suffered during surgery was caused by the conduct of [the] defendants, which conduct fell below the applicable standard of care.  *Nothing more was needed*." (*Id*. at pp. 607-608, italics added, fn. omitted.)  Therefore, unlike declarations of experts in support of defendants' motions for summary judgment, declarations of plaintiffs' experts in opposition to motions for summary judgment do not have to be detailed and are entitled to all favorable

20

inferences that may be reasonably made from those declarations. (*Powell*, *supra*, 151 Cal.App.4th at p. 125; *Hanson*, at p. 607.) Based on our review of the record in this case, we conclude the statements and opinions set forth in Navazo's declaration were sufficiently certain and supported by references to pertinent records as to create triable issues of material fact on the elements of breach of duty and causation on Hays's professional negligence cause of action. Center does not persuade us to reach a contrary conclusion.

D

*Navazo's purported conclusory opinions.* In sustaining in part Center's objections to portions of Navazo's declaration, the trial court also apparently concluded his opinions were conclusory. Because it did not elaborate on what specific deficiencies it perceived, we presume it believed Navazo's declaration did not set forth a sufficient explanation of the facts supporting his opinions that Center's care of Hays was below the applicable standard of care and caused her damages. However, our independent review of his declaration shows his opinions were sufficiently explained based in part on evidence he found in Hays's medical records.

In his declaration, Navazo stated that in forming his opinions he reviewed Hays's medical records maintained by Sharp, Center, and Paradise Valley Hospital, as well as Josephson's declaration. His review of her medical records showed she arrived at Center in relatively good condition regarding her skin integrity with a Braden score of 18, which would require watching but did not indicate any significant problems. He also stated that Hays's diabetes appeared to be generally under control, citing records showing 19 of 19

21

fasting blood sugar tests were less than or equal to 151 during the first 19 days following her admission to Center. He also stated that on her admission to Center she was adequately nourished and her weight was appropriate.

Navazo then stated his opinion that "Hays['s] skin integrity was manageable during the first two weeks following her admission and *there was no reason other than a lack of a proper plan and the failure to properly care for her in terms of skin integrity that resulted in the decubitus ulcer on her coccyx progressing to a stage IV ulcer*." (Italics added.) He noted that Hays's overall condition worsened in terms of nutrition, weight loss, and dehydration and her Braden score declined to as low as 12 within 21 days of her admission to Center. Navazo stated: "*In my opinion this could have been prevented . . . had a proper plan of care and monitoring been prepared and implemented. The records show no such plan. The records contain no mention of* [*a*] *physician at the facility documenting a plan of care for the ulcer. The attempt to address* [*Hays's*] *declining nutritional status and dehydration, in my opinion*[,] *came too late in her care, resulting in her decline while at* [*Center*]. *This conduct amounted to neglect in her care in my opinion and a lack of care in my opinion*." (Italics added.) He stated his opinions that Center's care of Hays "fell below the applicable standard of care for such treatment in terms of wound prevention and care" and that its care "cause[d] her decubitus ulcer . . . on her coccyx to progress to a stage IV ulcer, requiring extensive care and treatment and pain and suffering that could have been prevented had [she] been properly cared for" by Center.

22

As stated above, the liberal rule of construction of papers opposing a motion for summary judgment applies to preclude a requirement that the opposing party's expert set forth "in excruciating detail" the factual basis for opinions stated in his or her declaration. (*Hanson*, *supra*, 76 Cal.App.4th at p. 608, fn. 6.) Unlike declarations of experts in support of defendants' motions for summary judgment, declarations of plaintiffs' experts in opposition to motions for summary judgment do not have to be detailed and are entitled to all favorable inferences that may be reasonably made from those declarations. (*Powell*, *supra*, 151 Cal.App.4th at p. 125; *Hanson*, at p. 607.)

Liberally construing Navazo's declaration and making all reasonable inferences in support of Hays's opposition to Center's motion for summary judgment, we conclude Navazo's declaration sufficiently explained the reasons for his opinions by citing or describing certain evidence in her medical records. He noted her records showed her skin integrity and overall condition worsened in terms of nutrition, weight loss, and dehydration within 21 days of her admission to Center. Based on his review of her medical records, he could see no reason other than Center's lack of a proper plan and the failure to properly care for her in terms of skin integrity that resulted in the decubitus ulcer on her coccyx progressing to a stage IV ulcer. Her records did not show Center had, or implemented, a proper plan of care and monitoring for her. Her records did not show a physician at the Center created a plan of care for her decubitus ulcer on her coccyx. Also, her records showed Center's attempt to address her declining nutritional status and dehydration was too late to prevent the progression of that ulcer to a Stage IV ulcer. Liberally construing Navazo's declaration in favor of Hays's opposition to Center's

23

motion for summary judgment, we conclude his declaration sufficiently explained his reasons for his opinions that Center's care fell below the applicable standard of care and caused her decubitus ulcer on her coccyx to progress to a Stage IV ulcer. (Cf. *Shugart*, *supra*, 199 Cal.App.4th at pp. 505-506; *Powell*, *supra*, 151 Cal.App.4th at pp. 128-130; *Hanson*, *supra*, 76 Cal.App.4th at pp. 607-608.) Although more specificity and extensive reasoning in his declaration would have been preferable, we cannot conclude his declaration was inadmissible as conclusory. (Cf. *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1333 [opinions stated in declaration of plaintiff's expert were adequately supported by reasoned explanation and were therefore not "conclusory"].) Instead, Navazo's declaration was sufficient to meet Hays's burden of production to make a prima facie showing that there are triable issues of material fact on the elements of breach of duty and causation of the professional negligence cause of action. Accordingly, the trial court erred by sustaining Center's objections to Navazo's declaration as conclusory and granting its motions for summary adjudication on Hays's professional negligence cause of action and for summary judgment.

III

*Elder Abuse Cause of Action Against Center*

Hays does not substantively challenge on appeal the trial court's grant of Center's motion for summary adjudication of her elder abuse cause of action. We need not, and do not, address whether the court erred by granting summary adjudication for Center on that cause of action.

24

DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to vacate its order granting the motion for summary judgment and enter a new order granting the motion for summary adjudication of the elder abuse cause of action against Center and denying the motion for summary adjudication of the professional negligence cause of action against Center. Hays shall recover her costs on appeal.


McDONALD, J.

WE CONCUR:


HALLER, Acting P. J.


AARON, J.

25