Filed 5/29/25  Lopez v. Narayanan Nair MD CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SERENA LOPEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>NARAYANAN NAIR MD, INC.,<br><br>Defendant and Respondent. | F087238<br><br>(Super. Ct. No. BCV-21-102479)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Serena Lopez, in pro. per., for Appellant.

Law Office of LeBeau and Thelen and Alan J. Mish for Defendant and Respondent.

-ooOoo-

This is a medical malpractice action brought by pro. per. appellant and plaintiff Serena Lopez (Lopez) against respondent and defendant Narayanan Nair MD, Inc.,[1] for

---

[1]    The original complaint incorrectly named defendant "Narayanan Madhavan Nair MD Inc."  The correct corporate name is Narayanan Nair MD, Inc.

the conduct of plastic surgeon Dr. Narayanan Nair (collectively Dr. Nair). The trial court granted Dr. Nair's motion for summary judgment. On appeal, Lopez contends the court erred by finding that no triable issues of material fact existed with respect to the standard of care.[2] We reverse.

## FACTUAL BACKGROUND

On July 8, 2020, Lopez consulted with Dr. Nair and spoke to him about a ventral hernia.[3] According to Lopez, the ventral hernia was located "under [her] breast between [her] rib cage." Dr. Nair told Lopez that he was the best person to perform surgery on the hernia because he was a plastic surgeon. Dr. Nair did not examine Lopez's abdomen and did not tell Lopez that the surgery would involve an incision from her navel to her pubis.

On August 25, 2020, Dr. Nair performed surgery on Lopez. Before performing the surgery, Dr. Nair did not physically examine Lopez's abdomen, according to Lopez. The operative note indicates that the "preoperative diagnosis" was "umbilical hernia,"[4] the operation was an "umbilical hernia repair with mesh onlay," and the post-operative diagnosis was "umbilical hernia." The operative note also indicates that Lopez understood the possible risks and complications of the hernia repair were hematoma, infection, a need for repeat surgery, and hernia recurrence. The operative note also states in part that Dr. Nair made a midline incision from the xiphoid to the pubis, saw the hernia during the surgery, placed a mesh, plicated the rectus muscle, and closed the incision.

---

[2]     Lopez's opening brief contains a section entitled "THE COURT ERRED BY NOT ORDERING A CONTINUANCE." This section does not adequately explain how such an error occurred or demonstrate reversible error through citation to relevant legal authorities and the record. Therefore, Lopez forfeited any issue with respect to the denial of a continuance. (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 857.)

[3] A "ventral hernia" is "a bulge of tissue from inside the abdomen that pushes through a weak area of the muscles that form the front wall of the abdomen."

[4] An "umbilical hernia" is a type of ventral hernia that occurs "at the belly button."

From September 2020 to December 2020, Lopez had several follow up appointments with either Dr. Nair or Vipul Dev, M.D., his colleague. In short, Lopez was angry over the size and appearance of the abdominal scar, her extended contour, and the continued presence of the ventral hernia. For his part, Dr. Nair informed Lopez that there was no re-occurrence of the umbilical hernia and that her contour was improving.

On March 25, 2021, Lopez saw Vincent Phillips, M.D., a general surgeon. According to Lopez, she was referred to Dr. Phillips by her primary care physician, Greti Petersen, M.D. to have a ventral hernia repaired. The ventral hernia was located above the midline incision previously made by Dr. Nair. Lopez explained that this ventral hernia had been present both before and after Dr. Nair's surgery. Lopez believed that this ventral hernia was going to be repaired by Dr. Nair, but it was not. Lopez told Dr. Phillips that she experienced "a great deal" of swelling from Dr. Nair's operation and that she now had a significant abdominal abnormality because of the procedure.

On May 25, 2021, Dr. Phillips and plastic surgeon Hootan Daneshmand, M.D. performed surgery on Lopez. Dr. Daneshmand performed an abdominoplasty to fix the scarring on Lopez's abdomen, which was partially successful, and Dr. Phillips successfully repaired the ventral hernia with a small mesh. Dr. Phillips detected no scarring near the ventral hernia, and the ventral hernia was located above the prior midline incision that had been made by Dr. Nair.

**PROCEDURAL BACKGROUND**

On October 21, 2021, Lopez filed a pro. per. complaint in the Kern County Superior Court against Dr. Nair. The complaint alleged a single cause of action for professional negligence/medical malpractice. The complaint alleged that Dr. Nair breached the standard of care when he failed to repair a ventral hernia that was 1.4 centimeters, and instead performed an umbilical hernia repair that involved a 6.75-inch incision and that did not remove the ventral hernia. The complaint alleged that as a result

of Dr. Nair's negligence, Lopez had to undergo a second complex and painful surgery performed by Dr. Phillips.

On May 11, 2023, Dr. Nair re-noticed a summary judgment motion. Dr. Nair sought summary judgment on the grounds that he did not breach the standard of care and nothing he did caused Lopez harm. In his capacity as an expert board-certified plastic surgeon, Dr. Nair filed a declaration in support of his motion. Dr. Nair's motion also included as exhibits medical records from Dr. Nair and his colleague Dr. Dev, Dr. Nair's operative report, an office visit note from Dr. Phillips, and a CT scan from Kern Radiology.

On July 10, 2023, Lopez filed her opposition to Dr. Nair's motion. On July 19, Lopez filed an supplemental opposition, which contained an expert declaration of Dr. Phillips and contradicted Dr. Nair's declaration. This declaration was filed one day after deadline for filing an opposition to the motion. Although Dr. Phillips explained that he had reviewed various medical records that were identified in his declaration and were attached as exhibits, no exhibits were actually attached.

On July 26, 2023, Dr. Nair filed a reply. In part, Dr. Nair argued Dr. Phillips' declaration was untimely and did not establish an appropriate foundation to offer critical expert opinions because the medical records that Dr. Phillips reviewed had not been adequately authenticated.

On September 14, 2023, the trial court issued a written ruling granting Dr. Nair's motion. The court found that Dr. Nair's declaration was sufficient to demonstrate he did not breach the standard of care. The court overruled the timeliness objection to Dr. Phillips's declaration but also found that, because it was unknown what records Dr. Phillips had reviewed, Dr. Phillips's opinions lacked foundation and were insufficient to prevent summary judgment.

On September 25, 2023, Lopez filed a motion for reconsideration.

On November 21, 2023, the trial court denied Lopez's motion for reconsideration. Lopez timely appealed.

## DISCUSSION

I.    FOUNDATION FOR DR. PHILLIPS'S OPINIONS AND DECLARATION

A.    *Parties' Arguments*

Lopez does not directly address the evidentiary foundation for Dr. Phillips's opinions and declaration. However, Lopez argues that she provided extensive medical records relating to her claims of malpractice, Dr. Phillips was familiar with the matter, and Dr. Phillips repeatedly testified that Dr. Nair's conduct fell below the standard of care. Collectively, we take Lopez to impliedly argue that sufficient foundational evidence and inferences support Dr. Phillips's opinions.

Dr. Nair argues the trial court properly determined there was no foundation for Dr. Phillips's opinions since there was no declaration from a custodian of records regarding the medical records reviewed. Pursuant to *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735 (*Garibay*), Dr. Nair avers that Dr. Phillips's declaration cannot create a triable issue of fact.[5]

B.    *Additional Background*

1.    *Dr. Phillips's Declaration*

Lopez submitted the declaration of Dr. Phillips (Phillips Declaration) in opposition to summary judgment. With respect to the purpose of and bases for the declaration, Dr. Phillips declared:

---

[5]    Dr. Nair also argues the trial court should not have considered Dr. Phillips's declaration because it was untimely filed one day late. As noted above, the court considered and overruled this objection. Assuming his argument has not been forfeited as inadequately supported and developed (*In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 255), Dr. Nair has failed to establish that the court's ruling was an abuse of discretion. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765.)

"I am offering my expert opinion regarding the medical care and treatment rendered to plaintiff Serena Lopez, which is the subject of the within litigation. I have reviewed medical records of [Dr. Petersen], Kern Radiology, and [Dr. Dev], for her involving the care and treatment of [Dr. Nair]. Attached are true and correct copies prepared in the normal course of business from the clinic in which I was working during the care and treatment of Serena Lopez. The records are attached as 'Exhibit 1.' Mrs. Lopez gave a history of having had a large operation at Dr. Dev's office for a ventral hernia. She felt that the hernia was present immediately after the surgery and had not been addressed. She was referred to [Dr. Daneshmand] …, who performed an extensive scar revision and abdominoplasty on May 25, 2021. At that time of Dr. Daneshmand's surgery, I repaired her ventral hernia with mesh. Her lower midline incision and what remains of it is still somewhat unsightly. As the main concern today has to do with legal issues, I have reviewed records for her."

Dr. Phillips then described various medical records, including records concerning Dr. Nair. Specifically, Dr. Phillips described records regarding Dr. Nair and Dr. Dev from July 8, 2020, August 12, 2020, August 25, 2020 (day of the surgery), September 2, 2020, and December 3, 2020. Dr. Phillips also described his March 25, 2021 consultation with Lopez, as well as his May 25, 2021 surgery. As part of the description of the May 25 surgery, Dr. Phillips declared: "At that time, there was no scarring in the vicinity of [Lopez's] hernia and it was above her prior midline incision."

### 2. Trial Court's Ruling

After analyzing Dr. Nair's declaration, the trial court discussed the Phillips Declaration as follows:

"In response, Lopez files the untimely declaration of [Dr. Phillips] … in support of the opposition. Lopez includes reference to the opinions in the Phillips Declaration in her declaration filed in support of the opposition. The court – recognizing the preferred policy of determining matters on the merits – overrules Nair's objection to the timeliness of the Phillips Declaration.

"Unfortunately for Lopez, the Phillips Declaration is lacking. First, according to the Phillips Declaration, he reviewed the medical records of 'Greti Petersen, M.D., Kern Radiology, and Vipul Dev M.D.' … The

6.

reviewed records are purportedly attached to the Phillips Declaration as Exhibit 1…. There is no Exhibit 1 attached to the Phillips Declaration.

"Also problematic for Lopez is the fact the Phillips Declaration contains opinions regarding the standard of care provided by Dr. Nair. The basis of the opinions [is] not supported by – or based on – admissible medical evidence presented in support of the opposition. There is no evidence Dr. Phillips reviewed the records of Dr. Nair or that he directly reviewed the work of Dr. Nair. At best, Dr. Phillips reviewed third party records that included records prepared by Dr. Nair (or referenced the work of Dr. Nair in those third party records). Either way, the court is not provided the reviewed records and cannot make an assessment of the information."

Based on the above analysis, the court concluded that the Phillips Declaration was not competent evidence and did not constitute an admissible expert opinion.

C.     Legal Standard

An expert's opinion is considered to have no evidentiary value when the opinion is based on assumptions of fact that have no evidentiary support, or is based on considerations that are speculative or conjectural, or is rendered without a reasoned explanation as to how the underlying facts lead to the opinion or ultimate conclusion. (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155; *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123 (*Powell*).) Therefore, an expert declaration may be stricken or discounted if the opinions therein are speculative, lacking in foundation, or stated with insufficient certainty. (*Sanchez, supra,* at p. 155; *Powell, supra,* at p. 123.) However, it is improper to strike an expert declaration if the " ' "declaration establishes the matters relied upon in expressing the opinion, that the opinion rests on matters of a type reasonably relied upon, and the bases for the opinion." ' " (*Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, 1232–1233; *Powell, supra,* at p. 123.) A "trial court has broad discretion to determine whether proposed expert testimony lacks the necessary foundation to be reliable, relevant and admissible." (*People v. Fortin* (2017) 12 Cal.App.5th 524, 531; see *David v. Hernandez* (2017) 13 Cal.App.5th 692, 698.) Thus, a court's ruling excluding an expert's declaration on

7.

summary judgment is reviewed for an abuse of discretion. (*Powell*, *supra,* at p. 122.) A trial court may abuse its discretion by basing its decision on an incorrect legal standard or relying on facts that are not supported by substantial evidence. (*Vargas v. Gallizzi* (2023) 96 Cal.App.5th 362, 371.)

### D.    Analysis

The trial court essentially found the Phillips Declaration incompetent because Dr. Phillips did not establish a sufficient foundation for his opinions. Specifically, the court discounted the Phillips Declaration because: (1) it did not attach the reviewed medical records, despite representing that the records were attached as "Exhibit 1," (2) it did not establish a basis for Dr. Phillips's opinions because they were not supported by or based on admissible medical evidence; and (3) there was no evidence that Dr. Phillips reviewed the records of Dr. Nair or directly reviewed Dr. Nair's work, but at best only reviewed third party records. Despite the court's broad discretion, we conclude the court abused its discretion by discounting and excluding Dr. Phillips's opinions.

Like all medical experts, Dr. Phillips declared that he examined medical records. Those records were from Dr. Phillips's own practice, Drs. Nair and Dev's practice (including Dr. Nair's post-operative report), a radiology provider (Kern Radiology), and Lopez's primary care physician. We agree that, despite representing that medical records were attached as "Exhibit 1," the Phillips Declaration did not have any exhibits attached to it. Nevertheless, the cited records had been previously submitted by Dr. Nair in support of his summary judgment motion. Specifically, Dr. Nair authenticated and discussed his post-operative report, other records from his practice, a document from Kern Radiology, and a record from Dr. Phillips's practice. No objections to these records were made by Lopez, and there is no indication that the records were excluded. Therefore, in ruling on the summary judgment motion, it is apparent that the trial court considered, reviewed, and admitted the medical records included as exhibits to Dr. Nair's motion.

8.

The fact that these medical records were considered and admitted by the trial court is significant. Dr. Phillips describes specific records in his declaration by the date and content of the record. Dr. Phillips's description of his own record and Dr. Nair's and Dr. Dev's medical records, including the August 25 post-operative report, coincides precisely with the records submitted by Dr. Nair. No description of a medical record in Dr. Phillips's declaration is contrary to the corresponding medical record submitted by Dr. Nair. Because the dates and descriptions of medical records submitted by Dr. Nair coincide with the dates and descriptions in Dr. Phillips's declaration, it is apparent that Dr. Phillips reviewed and relied on the medical records that were submitted by Dr. Nair. (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 505–506 (*Shugart*) [finding that the opinions of a plaintiff's medical expert had a sufficient foundation where the expert's declaration correctly described but did not attach medical records that had been admitted by the defendant in support of a summary judgment motion].) "[A] party opposing [a motion for] summary judgment [need not] file duplicate copies of the medical records on which the opposing expert relied in forming a disputed expert opinion if [the records] are already before the court in support of the motion." (*Id.* at p. 506.) Contrary to the trial court's conclusion, the record shows that Dr. Phillips reviewed the medical records provided by Dr. Nair's motion, including Dr. Nair's own medical records.[6]

Additionally, Dr. Phillips was not a typical expert witness in that he did not simply review medical records — Dr. Phillips was also a percipient witness who actually treated

---

[6]     Dr. Nair contends that this case is controlled by *Garibay*, which held an expert's declaration was without foundation where the expert failed to attach the medical records he had relied upon. (*Garibay*, *supra*, 161 Cal.App.4th at pp. 740, 742–743.) We disagree. Unlike *Garibay*, Dr. Phillips was a percipient witness, the Phillips Declaration is an *opposition* declaration and not a *moving* declaration, and the records Dr. Phillips relied on were already before the court through Dr. Nair's motion. (Cf. *ibid.*) For these reasons, this case is controlled by *Shugart*, not *Garibay*.

Lopez. Dr. Phillips physically examined Lopez, performed surgery on her, and heard directly from her regarding her existing medical conditions and past medical procedures. Critically, Dr. Phillips also saw directly what procedure Dr. Nair had performed, the resulting scarring, the location and condition of the non-umbilical ventral hernia, and the failure to remove that non-umbilical ventral hernia even though that ventral hernia had been present both before and after Dr. Nair's surgery. Contrary to the trial court's conclusion, the record affirmatively establishes that Dr. Phillips directly reviewed Dr. Nair's work.

Accordingly, we conclude Dr. Phillips had a sufficient basis for rendering expert opinions on the care Lopez received from Dr. Nair. The foundation for those opinions was his own personal knowledge of the underlying facts and, at least, the medical records submitted by Dr. Nair in support of the motion for summary judgment. The trial court's contrary conclusion was based on inapplicable case authority (*Garibay*) and on findings that were not supported by the evidence. Thus, the court abused its discretion and erred by discounting and excluding the Phillips Declaration. (*Vargas v. Gallizzi*, *supra*, 96 Cal.App.5th at p. 371; *Shugart*, *supra*, 199 Cal.App.4th at pp. 505–506.)

II.     EXISTENCE OF A DISPUTED TRIABLE FACT

        A.      *Parties' Arguments*

Lopez argues that Dr. Phillips's opinions identify several breaches of the standard of care by Dr. Nair, and these opinions create triable issues of material fact. Dr. Nair argues that, because expert medical evidence is necessary to demonstrate a breach of the standard of care, and because the Phillips Declaration lacks foundation, there are no triable issues of material fact. We agree with Lopez.

        B.      *Additional Background*

                1.      *Dr. Nair's Declaration*

Dr. Nair declared in part that he is licensed in California, specializes in surgery, and is aware of both the applicable standard of care for physicians in California and the

10.

Central Valley and the definition of "legal cause" in California.  In relevant part, Dr. Nair gave the following opinions:

> "The [August 25, 2020] hernia surgery was completed without any complications and was performed within the standard of care.  The incision was made based on my training.  The incision can be made in a number of different ways, all of which are within the standard of care.  The incision I made was within the standard of care. [¶] … [¶]
>
> "It is my professional opinion, based upon my training, experience, and familiarity with the standard of care for physicians, that I met the standard of care at all times during my care and treatment of [Lopez].  The opinion is based on the following: [¶] … [¶]
>
> "(b)  I performed hernia surgery on Lopez on August [25], 2020.  At the time I performed the surgery I repaired the hernia that was present.  I explained to her prior to the surgery that a hernia can reoccur, as well as a risk for a hematoma.  After the surgery, [Lopez] did develop a hematoma which ultimately resolved.  She then was claiming that she had a reoccurrence of the hernia.  The CT performed by Kern Radiology on November 12, 2020 did not show a hernia.  At the time she left our practice she did not have any evidence of a reoccurrence of a hernia.
>
> "(c)  The History and Physical prepared by Dr. Phillips stated that the hernia was above the prior incision.  This demonstrates that there was either a reoccurrence of the hernia repair which is a risk of the surgery, or [Lopez] developed another hernia after she left our practice.  There was no evidence of a hernia prior to her leaving our practice.  If it was a reoccurrence of the prior hernia, that is a risk of the procedure – one that even Dr. Phillips in his History and Physical acknowledges can occur.
>
> "(d)  I performed surgery on the hernia that [Lopez] had in August 2020.  That hernia was repaired.  It appears that Ms. Lopez then either developed a new hernia or a reoccurrence of a hernia, all of which are risks of the procedure.  I complied with the standard of care at all times in my care and treatment, and the need for the second surgery was not as a result of a violation of the standard of care.  There was nothing I did or did not do which was a substantial factor in causing injury or damage to the plaintiff."

### 2. *Dr. Phillips's Declaration*

Dr. Phillips declared in part that he is licensed in California as a general surgeon, has been qualified as a surgeon since 1976, and is aware of both the applicable standard

11.

of care for physicians in California and the Central Valley and the definition of "legal cause" in California.  In relevant part, Dr. Phillips gave the following opinions:

"It is my professional opinion, based upon my training, experience and familiarity with the standard of care for physicians, that Dr. Nair did not meet the standard of care at all times during the care of Ms. Lopez.

"(a)    Mrs. Lopez did not require a long midline incision to repair either an umbilical hernia or the small ventral hernia.  Both could have been repaired through incisions less than 5 cm in length.

"(b)    She did not require rectus plication.  This lady was seen by her surgeon, Dr. Nair, and no abdominal examination is recorded in his notes.

"(c)    Whether he appreciated the fact that she had the small ventral hernia or not is unknown [but] certainly questionable since he did not repair it.

"(d)    If she had an umbilical hernia, it is not well described either in his notes or preoperatively by other physicians.  Her long midline incision was quite unsightly and it is hard to believe that a plastic surgeon made it.

"(e)    If I had seen this lady preoperatively, her abdomen would have been examined.

"(f)    If she had a small umbilical hernia, it would have been repaired through a small umbilical incision and the ventral hernia which was described by [Lopez as] having been present the entire time would have been repaired through a separate small incision of less than 5 cm in length.

"(g)    To have done an abdominal [plication] or other attempted cosmetic procedures through a midline incision would be inappropriate.  It is hard to believe that [Dr. Nair] is a competent plastic surgeon.

"(h)    To a reasonable degree of medical certainty Dr. Nair did not repair the hernia.  The hernia was not a reoccurrence.

"(i)    The need for the second surgery was the result of the violation.  The surgery by Dr. Nair was the substantial factor in causing injury and damage to Ms. Lopez.

12.

"(j)    The evidence demonstrates the causal connection between Dr. Nair's action and [Lopez's] injuries and damages.  Dr. Nair did not comply with the standard of care and treatment.

"(k)    The foregoing are only some of the observations that I have made relevant to this case which support my expert opinion that Dr. Nair's [conduct] fell below the standard of care and caused damages to Ms. Lopez."

## C.    Legal Standards

### 1.    Summary Judgment

Appellate courts employ a de novo standard of review to a trial court's decision granting summary judgment.  (*California Medical Assn. v. Aetna Health of California Inc.* (2023) 14 Cal.5th 1075, 1087; *Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39 (*Gonzalez*).)  In conducting a de novo review, appellate courts identify the issues framed by the pleadings, determine whether the moving party met its burden of establishing facts that justify summary judgment, and, if so, determine whether the moving party has demonstrated the existence of a triable issue of material fact.  (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 29.)  All of the evidence set forth in the moving and opposition papers, except that to which objections were made and properly sustained by the trial court, is to be considered.  (*640 Octavia, LLC v. Pieper* (2023) 93 Cal.App.5th 1181, 1189; *Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 662.)  The evidence is viewed in the light most favorable to the non-moving party, the non-moving party's evidence is accepted as true, and all reasonable inferences are made in the non-moving party's favor.  (See *California Medical Assn.*, *supra,* at p. 1087.)  Further, the non-moving party's evidence is liberally construed, and all doubts are resolved in the non-moving party's favor.  (*Gonzalez*, *supra,* at p. 39; *Doe*, *supra,* at p. 662.)  "Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "There is a triable issue of material fact if, and only if, the evidence would allow a

13.

reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; *Atalla v. Rite Aid Corp.* (2023) 89 Cal.App.5th 294, 308.)

### 2. Medical Malpractice

The elements of a medical malpractice claim are: (1) a duty to follow the professional standard of care, which is the duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) an actual loss or damage from the negligent conduct. (See *San Antonio Regional Hospital v. Superior Court* (2024) 102 Cal.App.5th 346, 350; *Borrayo v. Avery* (2016) 2 Cal.App.5th 304, 310.) The applicable professional standard of care by which a physician is adjudged is the "reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of the medical profession under similar circumstances." (*Bardessono v. Michels* (1970) 3 Cal.3d 780, 788; *Charlie L. v. Kangavari* (2025) 107 Cal.App.5th 1117, 1125.) With limited exception, expert testimony is needed to establish the applicable standard of care, how the physician's conduct breached the applicable standard of care, and how the breach proximately caused the plaintiff's damages. (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1542; see also *San Antonio Regional Hospital*, *supra,* at p. 350.) If a defendant moves for summary judgment on the basis that his conduct fell within the applicable standard of care, and supports the motion with an expert declaration, the defendant will be entitled to summary judgment unless the plaintiff submits conflicting expert evidence. (*Borrayo*, *supra,* at p. 310; *Powell*, *supra*, 151 Cal.App.4th at p. 123.)

### D. Analysis

Dr. Nair's declaration expressly states that he complied at all times with the standard of care, including in the repair of the hernia "that was present" during the

August 25 surgery and in the performance and utilization of a midline incision. The trial court held that Dr. Nair's declaration was sufficient to shift the burden to Lopez to present contrary expert evidence. We agree with the court's assessment of Dr. Nair's declaration. However, viewed in the light most favorable to Lopez (*Gonzalez*, *supra*, 12 Cal.5th at p. 39), we conclude she met her burden by submitting the Phillips Declaration. (*Powell*, *supra*, 151 Cal.App.4th at p. 123.)

Dr. Phillips expressly declared that Dr. Nair breached the standard of care. Given this assertion, we read the Phillips Declaration as describing at least four breaches of the standard of care. (*Gonzalez*, *supra*, 12 Cal.5th at p. 39.) First, Dr. Phillips opined that, based on how unsightly the midline incision actually looked, Dr. Nair's midline incision was incompetently made. Second, Dr. Phillips opined that performing an abdominal plication through the midline incision was incompetent. Third, Dr. Phillips opined that the midline incision was unnecessary. Dr. Phillips declared that he repaired Lopez's ventral hernia with a five-centimeter incision and that the umbilical hernia Dr. Nair repaired should have been repaired with a five-centimeter (or two-inch) incision, as compared to the six and three-quarter inch (or 17.15 centimeters) midline incision. Finally, the Phillips Declaration indicates Dr. Nair failed to realize which hernia Lopez wanted repaired and did not take the appropriate steps to correct the ventral hernia. Lopez was seeking treatment for a ventral hernia located under or near her breast. Lopez declared that she had this ventral hernia both before and after the August 25 surgery and believed Dr. Nair would repair that hernia. Lopez also declared that she was not informed that a large midline incision would be utilized, and that Dr. Nair never physically examined her abdomen. Dr. Phillips declared that the ventral hernia described by Lopez (which he repaired) was above the midline incision, had no scarring around it, and was not a reoccurrence of the umbilical hernia repaired by Dr. Nair. Further, as Dr. Phillips notes, the relevant medical records do not clearly describe an umbilical hernia. Prior to the August 25 surgery, Dr. Nair's office medical records do not use the term

15.

"umbilical hernia," and the first time the term "umbilical hernia" appears is in the post-operative report. Therefore, the totality of the evidence can reasonably be viewed as showing that Dr. Nair negligently failed to attempt to repair the non-umbilical ventral hernia, failed to understand and ensure that he was to repair the non-umbilical ventral hernia, and repaired the wrong hernia and performed a surgery (the umbilical hernia repair) that Lopez had not authorized.

Accordingly, the above considerations demonstrate there are multiple disputed breaches of the standard of care at issue. As a result, the trial court erred by granting Dr. Nair's summary judgment motion.[7] (*Shugart*, *supra*, 199 Cal.App.4th at p. 506; *Powell*, *supra*, 151 Cal.App.4th at pp. 129–130; see also *Regents of University of California v. Superior Court*, *supra*, 4 Cal.5th at p. 618.)

## DISPOSITION

The judgment is reversed. Lopez is awarded her costs on appeal. This matter is remanded back to the Kern County Superior Court for further proceedings consistent with this order.

FRANSON, J.

WE CONCUR:

LEVY, Acting P. J.

SMITH, J.

---

[7] Dr. Nair does not argue that the trial court's order should be upheld on the basis of causation. Accordingly, we make no determinations regarding that issue. We do note, however, that Dr. Phillips opined that Dr. Nair's conduct was a substantial factor in causing Lopez harm.